AYRES, Judge.
This is an action for workmen’s compensation. Plaintiff alleges that, on February 1, 1965, he sustained accidental injuries as a result of which he is totally and permanently disabled within the intent and purview of the workmen’s compensation statute, LSA-R.S. 23:1021 et seq.
Plaintiff seeks to recover the then statutory maximum benefits of $35.00 per week during the period of his disability, not, however, extending beyond 400 weeks. Recovery of hospital and medical expenses is also sought as are penalties and attorney’s fees.
Recovery was initially sought against only Elbert O. Tilton, who allegedly employed plaintiff in his farming operations. By a third-party proceeding, Tilton sought judgment over against Southern Farm Bureau Casualty Insurance Company, his workmen’s compensation insurer, for any amount to which the former might be held liable to plaintiff. In the alternative, plaintiff sought recovery against Tilton, J. N. Shoptaw, and J. W. Tanner, in solido, on the basis that plaintiff was an employee in their pulpwood operations. Through various third-party proceedings, each of these parties sought relief against others and particularly against Key Life Insurance Company of South Carolina on a liability policy issued to Tanner.
After trial, plaintiff was awarded compensation against Tilton and Southern Farm, in solido, at the then maximum rate for a period of 69 weeks, aggregating $2,415.00, and hospital and medical expenses in the sum of $1,130.99. All other demands of the opposing parties were rejected.
*321 From the aforesaid judgment, plaintiff, William B. Church, and the Southern Farm Bureau Casualty Insurance Company perfected devolutive appeals.
Plaintiff sustained personal injuries while manually unloading pulpwood from a truck and loading it in a railroad boxcar for shipment to a pulp and paper mill. In the performance of this work plaintiff picked up a stick of wood from the truck and threw it into the railroad car. The stick rolled backward, striking and carrying plaintiff with it. Plaintiff, in falling, struck his back against a steel brace on the truck. His back weakened and he continued to fall down on the wood remaining on the truck. Severe burning sensations of pain immediately developed in plaintiff’s back. Plaintiff lay where he fell for approximately 20 minutes. In the meantime, the truck was unloaded by a helper, after which plaintiff and the helper returned to a farm designated as the “Adger place,” where plaintiff reported his accident and injuries to Tilton. Immediately thereafter, plaintiff sought the services of Dr. S. G. Carrington. About 8:00 p. m., plaintiff was admitted to P. & S. Hospital where he remained in traction for a period of nine days under the care of Dr. Fred L. Price.
After returning home from the aforesaid hospital confinement, plaintiff again sought hospitalization and was accordingly admitted to Doctors’ Hospital on March 17, 1965, under the care and attention of Dr. Philip Bonn for a period of 11 days. On the 18th of the month plaintiff was subjected to surgery for the removal of a ruptured disc at the L-4 level of the vertebrae. For a period from April to June, 1965, Dr. Bonn reported a continuation of residual muscle spasm in plaintiff’s back, buttocks, and lumbar areas for which he prescribed muscle relaxants.
As a result of injuries again sustained, on October 20, 1966, when plaintiff stepped out of a truck and slipped on mud and fell on an automobile tire, he was referred by Dr. Robert L. Mack to Dr. W. W. Fox, III. Plaintiff complained of pain in his back and left hip, radiating down his left leg. Numbness and weakness in the leg with pain in the bottom of his foot were also noted. Upon examination, the doctor concluded that plaintiff had symptoms of recurrent sprain of the L 4-5 vertebrae, as well as acute or residual involvement of the fifth lumbar nerve root. Under date of December 28, 1966, a spinal tap at the aforesaid vertebral level was made with an injection of six ccs. of Pantopaque. A defect was noted in the disc space. On the following day, surgery was again performed at this level wherein a dissection was carried down to the lamina. Old scar tissue was resected from the nerve root. A disc which was soft in this area was incised and removed, as was some old residual disc material. The patient’s postoperative condition was uncomplicated, and he was discharged from the hospital on January 6, 1967.
That plaintiff was totally disabled, within the terms of the compensation statute, immediately following and as a consequence of the first accident is apparently conceded. At least the record leaves no basis for doubt. The same is true with respect to the second accident. An important issue is whether plaintiff had completely recovered from the effects of the first accident and had regained his ability and capacity to perform hard manual labor prior to the occurrence of the second accident. Therefore, an incidental question is whether the latter accident aggravated or worsened the conditions produced by the first accident.
Dr. Fox, who performed an operation following the second accident, with respect to an intervertebral disc in the same general area as was performed in the first instance, testified that the second injury aggravated the first. The doctor expressed, however, a general opinion that plaintiff had recovered from the effects of the first accident. This belief was apparently based not upon any medical findings but upon a supposition that since it had been reported *322 plaintiff had been performing manual labor, surely he must have recovered to the extent that he could do so. However, the work performed by plaintiff before, and which was being performed at the time of his first accident, included the lifting of heavy loads, such as pulpwood, which he was required to manually load on a truck and subsequently transfer from the truck to railroad cars. His work at the time of the second accident consisted generally of driving a truck, in which no heavy lifting or manual labor was required. It is deemed worthy of note that the doctor further testified that of persons similarly injured only SO or 60% were able to return to hard manual labor.
In this regard, Dr. Price expressed an opinion that plaintiff was disabled for the performance of hard manual labor. He stated that persons with injuries of the character sustained by plaintiff should never be advised to return to hard manual labor. He agreed with Dr. Fox that the second accident aggravated the effects of the first.
Plaintiff’s partial, permanent disability was estimated by Dr. Fox at 15% to his back and about 10% to his body as a whole.
From our review of the record, we conclude a preponderance of the evidence establishes that as of the time of trial, plaintiff was totally and permanently disabled from the performance of hard manual labor of a reasonable character, and that such disability not only resulted from the first accident but was aggravated by the injuries sustained in the second.
On the question of liability, the record, in our view, supports the determination of the trial court that plaintiff was in the employ of E. O. Tilton. Tilton had contracted with a Mrs. Adger to clear and place in cultivation certain land. The timber located thereon was pushed over and uprooted by the use of bulldozers; such as was merchantable, particularly the cottonwoods, was cut into pulpwood lengths, sold, and delivered onto railroad cars. The conversion of this timber to commercial purposes instead of its destruction by fire was incidental to and constituted part and parcel of Tilton’s farming operations which were covered by his workmen’s compensation insurance policy obtained from Southern Farm Bureau Casualty Insurance Company.
We are not impressed, as obviously the trial court was not, with the argument that Tanner or any other of the named parties was also an employer of plaintiff, or that the liability policy issued to Tanner by Key Life Insurance Company inured to plaintiff’s benefit. The record reflects that plaintiff has been paid compensation in an undisclosed amount on account of the second accident by those who were responsible therefor and who have not been impleaded in this action. Plaintiff’s award should be credited with whatever payments have been made. The rights of all parties interested in adjusting whatever claims they have should be reserved, hopefully, for amicable settlement or, if required, for determination in appropriate proceedings.
For the reasons assigned, the judgment appealed is amended by increasing the term of compensation payable for the period of plaintiff’s disability, not, however, to exceed 400 weeks from February 1, 1965, the date of plaintiff’s injury, with legal interest on each of the weekly installments of $35.00 from its maturity until paid, subject to a credit of whatever compensation plaintiff has been paid, if any; and, as thus amended, the judgment appealed is affirmed at the cost of the defendants E. O. Tilton and Southern Farm Bureau Casualty Insurance Company.
The rights of plaintiff’s employers and their insurers to an adjustment of their respective claims, if any, are reserved.
Amended and affirmed.