Ana Elisa Negrón Marrero, Etc., demandantes y recurridos, *v.* C.I.T. Financial Services Corp., demandada y peticionaria.

*Número:* O-81-344      *Resuelto:* 30 de octubre de 1981

Federico Calaf Legrand, de Reichard & Colberg, abogado de la peticionaria; Enrique Reyes Coreano, abogado de los recurridos.

El Juez Asociado Señor Irizarry Yunqué emitió la opinión del Tribunal.

La Ley de Compensaciones por Accidentes del Trabajo dispone en su Art. 20 (11 L.P.R.A. sec. 21)(1) que el dere-

---

(1) "Sec. 21. *Exclusividad del remedio provisto.*

Cuando el patrono asegure sus obreros y empleados de acuerdo con el pre-

cho en ella establecido para obtener compensación será el único remedio en contra del patrono que asegure a sus empleados. Se plantea en el presente recurso si bajo dicha disposición está protegido un patrono contra una acción por muerte de un empleado suyo ocurrida en relación con su trabajo, si dicho empleado, al ser contratado, estaba declarado total y permanentemente incapacitado y había recibido la correspondiente compensación con motivo de un accidente del trabajo anterior, sin que exista relación entre dicho accidente y el que le ocasiona la muerte ni con la condición que motivó su incapacidad. Resolvemos en la afirmativa. La Ley de Compensaciones por Accidentes del Trabajo es un estatuto remedial de alcances limitados y no puede interpretarse para prohibir o restringir la actividad laboral.

Los hechos pertinentes a la cuestión planteada son los siguientes: Para el año 1966 el Sr. Perciliano Emmanuelli Arroyo sufrió un accidente del trabajo mientras se desempeñaba como miembro de la Policía de Puerto Rico. Como resultado, fue declarado total y permanentemente incapacitado a los fines de la Ley de Compensaciones por Accidentes del Trabajo. Quedó retirado de la Policía y recibió del Fondo del Seguro del Estado la cantidad de $18,900, cantidad a que tenía derecho por su incapacidad, al optar por recibir dicha suma global en vez de aceptar una pensión a base de pagos parciales regulares.

Posteriormente, en el 1976, el señor Emmanuelli Arroyo comenzó a trabajar para la C.I.T. Financial Services Corp., aquí peticionaria, en calidad de cobrador de cuentas. El 22 de septiembre de 1977, mientras estaba en funciones

---

sente Capítulo, el derecho aquí establecido para obtener compensación será el único remedio en contra del patrono, aun en aquellos casos en que se haya otorgado el máximo de las compensaciones o beneficios de acuerdo con el mismo; pero en el caso de accidentes, enfermedades o muerte de los obreros o empleados no sujetos a compensación de acuerdo con este Capítulo, la responsabilidad del patrono es y continuará siendo la misma que si no existiere el presente Capítulo."

de su empleo, fue muerto a balazos. Para esa fecha C.I.T. había pagado al Fondo del Seguro del Estado las correspondientes primas sobre el seguro de sus empleados, entre los cuales se incluía al señor Emmanuelli Arroyo.

En septiembre de 1978 la viuda y seis hijos menores de edad del señor Emmanuelli Arroyo instaron demanda por daños y perjuicios contra C.I.T. Financial Services Corp. El 13 de julio de 1978 el Fondo del Seguro del Estado había emitido decisión en que declaró que, habiéndose declarado al empleado Emmanuelli total y permanentemente incapacitado con motivo del accidente del año 1966, y habiéndose pagado en su totalidad la compensación a que tenía derecho, estaba "fuera del mercado laboral" al ocurrir el incidente en que se produjo su muerte en 1977, y por tanto sus beneficiarios no tenían derecho a compensación.

La C.I.T. solicitó la desestimación de la demanda a base de la disposición que excluye de responsabilidad al patrono asegurado, antes citada y transcrita en el escolio 1 de esta opinión. El tribunal de instancia aplazó su decisión para cuando se resolviera por la Comisión Industrial el recurso de apelación que la viuda e hijos habían interpuesto contra la decisión del Fondo. El 25 de noviembre de 1980 la Comisión Industrial emitió resolución en que confirmó lo decidido por el Fondo. No se instó recurso alguno contra dicha resolución. El 5 de mayo de 1981 emitió resolución el Tribunal Superior en que denegó la solicitud de desestimación y señaló el caso para vista. No conforme, C.I.T. nos solicitó auto de *certiorari* para revisar dicha resolución. El 15 de julio requerimos a los demandantes recurridos mostraran causa por la cual no debíamos expedir el auto, revocar la resolución recurrida y ordenar la desestimación de la demanda. Su comparecencia no nos persuade para que variemos el criterio intimado.

▬ Precisa para determinar si el patrono en este caso está protegido por la cláusula sobre exclusividad de

remedio, resolver si bajo las circunstancias aquí presentes sería compensable la muerte del empleado. Si bien la decisión del Fondo que denegó el derecho a compensación es final y firme por no haberse recurrido contra la resolución confirmatoria de la Comisión, el patrono y aquí peticionario no fue parte en ese proceso administrativo. La decisión del Fondo es cosa juzgada entre el Fondo y los beneficiarios del empleado, aquí recurridos. Pero esa decisión administrativa no puede ser obstáculo para que en el ámbito judicial se determine su corrección a los fines de la cláusula de exclusividad invocada por la peticionaria. No habiendo sido parte, no es cosa juzgada en cuanto a ella. No hay "la más perfecta identidad entre las cosas, las causas, *las personas de los litigantes y la calidad con que lo fueron*", requisitos que deben concurrir para que aplique la presunción de cosa juzgada. (Énfasis nuestro.) Art. 1204 del Código Civil, 31 L.P.R.A. sec. 3343; *A & P Gen. Contractors* v. *Asoc. Caná*, 110 D.P.R. 753 (1981); *Pagán Hernández* v. *U.P.R.*, 107 D.P.R. 720, 732–733 (1978); *Lausell Marxuach* v. *Díaz de Yáñez*, 103 D.P.R. 533, 535 (1975); *Rodríguez* v. *Sucn. Pirazzi*, 89 D.P.R. 506, 519 (1963), y casos allí citados.[2]

Es de notarse, además, que el patrono aquí peticionario no podría ser parte en el recurso ante la Comisión Industrial. Dijimos en *Alonso García* v. *Comisión Industrial*, 103 D.P.R. 881, 882 (1975): "El Art. 10 [de la Ley de Compensaciones por Accidentes del Trabajo], 11 L.P.R.A. sec. 11, enumera en forma taxativa quiénes tienen capacidad jurídica para recurrir ante la Comisión Industrial cuando no estuvieren conformes con los pronunciamientos del Fondo. Podrán apelar: el obrero o empleado, sus bene-

---

[2] Cabe señalar que en el ámbito administrativo se reconoce una gran flexibilidad en la aplicación de la doctrina de cosa juzgada de manera que pueda hacerse cumplida justicia, sobre todo si se trata de estatutos remediales y de interpretación liberal como lo es la Ley de Compensaciones por Accidentes del Trabajo. *Cf. Martínez* v. *Tribunal Superior*, 83 D.P.R. 717 (1961).

ficiarios y en los casos de patronos no asegurados, tanto éste como el obrero." No está en discusión que C.I.T. Financial Services Corp. era un patrono asegurado en el momento de causarse la muerte a su empleado señor Emmanuelli. Había pagado las primas correspondientes al Fondo e incluido al señor Emmanuelli en la nómina de sus empleados cubiertos bajo el seguro del Estado.

Finalmente, para disponer de esta cuestión preliminar, vale decir que no estamos obligados, al resolver el presente caso, por una decisión errónea del Fondo y de la Comisión. Como hemos señalado, dicha decisión no puede afectar a la peticionaria.

Pasemos a la cuestión medular ante nos; es decir, a la consideración de si era compensable la muerte del señor Emmanuelli no obstante haber sido declarado total y permanentemente incapacitado con motivo de un accidente anterior, compensación que ha había recibido en su totalidad. Si lo era, como así lo entendemos, está protegida la peticionaria por la mencionada cláusula, pues bajo tales circunstancias su inmunidad contra responsabilidad en daños es absoluta. *Vda. de Andino* v. *A.F.F.*, 93 D.P.R. 170, 181 (1966); *Cortijo Walker* v. *Fuentes Fluviales*, 91 D.P.R. 574 (1964).

No se trata aquí del caso de un empleado que muere como consecuencia de un accidente ya compensado o en proceso de ser compensado. Véase *Bruno Colón* v. *Comisión Industrial*, 109 D.P.R. 785 (1980). Se trata de dos accidentes distintos sin que hubiera relación alguna entre ellos.

Tampoco estamos ante un caso de agravación o aumento de una incapacidad preexistente, a que se refiere en uno de sus apartados el Art. 3 de la Ley de Compensaciones por Accidentes del Trabajo.(3) Dicha disposición se refiere, por sus propios términos, a (1) la agravación de una incapa-

---

(3) Por ser extenso, y en aras de brevedad, no lo reproducimos. Refiérase el lector a 11 L.P.R.A. sec. 3, inciso 4, bajo el título "Incapacidades preexistentes".

cidad preexistente a causa de un segundo accidente y, (2) al procedimiento para liquidar la compensación que corresponda a un obrero que fallezca por una causa independiente de aquella por la cual estuviere recibiendo compensación o estuviere pendiente de reconocérsele el derecho a compensación por una incapacidad total permanente. El presente caso no cae bajo ninguna de esas alternativas. Aquí no se agravó una incapacidad preexistente. Tampoco se trata de liquidar la compensación que estuviere recibiendo o que estuviere por recibir el empleado por un accidente compensable en el momento en que le sobrevenga la muerte. El señor Emmanuelli ya había recibido la compensación a que tenía derecho por motivo de su incapacidad total permanente y no había nada que liquidar.(4)

La cuestión planteada es novel en esta jurisdicción. La

---

(4) Por si hubiese dudas en cuanto al alcance del segundo supuesto —liquidación de la compensación recibiéndose o por recibirse— véase el informe sometido a la Cámara de Representantes por su Comisión de Hacienda, de 15 de mayo de 1968, cuando se consideraba el P. del S. 693, que se convirtió en la Ley Núm. 103 de 21 de junio de 1968, en virtud de la cual se enmendó el citado Art. 3 en los términos indicados, es decir, para disponer la manera de liquidar lo no cobrado por el obrero fallecido. Dijo dicha Comisión:

"En cuanto a los trabajadores que mueran por causas ajenas a las lesiones por las cuales se le hubiere otorgado, o estuviere por otorgársele, una incapacidad total permanente al momento de su muerte, la enmienda establecería la forma de pago y la fórmula para computar la suma a pagarse. En caso que el lesionado fallecido hubiere optado por hacer una inversión, el remanente de su compensación se hará efectivo a los beneficiarios en pagos mensuales de $125. Se toma esa cuantía en consideración a otra enmienda que se está proponiendo a este mismo Artículo y que elevaría el pago mensual máximo permitido a $125. En caso de subsistir otros beneficiarios además de la viuda, hijos o concubina, la enmienda provee que la distribución de la compensación se hará con sujeción a lo dispuesto en el inciso 5(3) del Artículo 3.

"En el caso en que el lesionado no hubiere optado por una inversión, la compensación total a pagarse a los beneficiarios se computará multiplicando 540 semanas por su compensación semanal equivalente al 66-2/3% del salario semanal que el lesionado hubiera de percibir el día de su accidente. En ningún caso se computarán semanas a más de $45 ni menos de $10 y en ningún caso la compensación total excederá la suma de $18,900. Por esta enmienda se establece una fórmula para establecer la cuantía máxima a pagar en otras disposiciones de la ley."

Ley de Compensaciones por Accidentes del Trabajo no contiene disposición alguna que expresamente la resuelva. Nuestra jurisprudencia tampoco ha tenido ocasión de abordarla. Al decidirla deberemos interpretar la citada ley teniendo en cuenta su carácter remedial y la pauta de liberalidad en su interpretación que en el estatuto se consigna. [5]

■ Dicha ley no contiene prohibición alguna para el empleo de una persona que haya sido declarada incapacitada total y permanentemente bajo sus términos. La citada pauta liberal de hermenéutica impide que por interpretación concluyamos que existe tal prohibición. De hecho, solamente en casos extremos —quizás aquellos en que la persona esté demente o impedida física y mentalmente de tal manera que no haga sino vegetar— puede concebirse una total incapacidad para desempeñarse en algún empleo lucrativo. La ley define la "incapacidad total" en el inciso 4 de su Art. 2 (11 L.P.R.A. sec. 3(4)) de la siguiente manera:

> Se considerará incapacidad total la pérdida total y permanente de la visión industrial de ambos ojos, la pérdida de ambos pies por el tobillo o más arriba, la pérdida de ambas manos por la muñeca o más arriba; la pérdida de una mano y un pie, perturbaciones mentales totales que sean incurables, y las lesiones que tengan por consecuencia la incapacidad total y permanente del obrero o empleado para hacer toda clase de trabajo u ocupaciones remunerativas.

■ Como puede verse, la "incapacidad total" definida por este artículo no es sinónima de incapacidad absoluta. Una persona que pierda la visión de ambos ojos puede emplearse lucrativamente en una profesión u ocupación

---

[5] Dice en su Art. 2 (11 L.P.R.A. sec. 2) en su segundo párrafo:

"Este Capítulo por ser de carácter remedial se interpretará liberalmente, y cualquier duda razonable que en su aplicación surgiere en cuanto a la existencia de relación causal entre el trabajo u ocupación del obrero o empleado y la lesión, incapacidad o muerte, o el carácter ocupacional de una enfermedad, deberá resolverse a favor del obrero o empleado, o sus beneficiarios."

que no requiera necesariamente el uso de la vista. Una persona privada de ambos pies no está impedida de usar sus manos y ser recepcionista de oficina, taquígrafa, mecanógrafa, profesora, contable, abogada, médico, etc. Sería interminable la lista de oficios y profesiones que pueden ejercer personas con condiciones incapacitantes como las recogidas en la referida definición y adjetivadas como totales. Prohibir a esas personas que se desempeñen en algún empleo remunerado no incompatible con su condición y excluirlos de la fuerza laboral sería injusto y opresivo y equivaldría a convertirles en parias señaladas con el estigma de inaceptables para el trabajo. Sería condenarlas a la pobreza, si se considera lo exiguo de las compensaciones que dicha ley autoriza para las llamadas incapacidades totales permanentes.[6] Ello chocaría con el precepto constitucional que reconoce "el derecho de todo trabajador a escoger libremente su ocupación y a renunciar a ella, a recibir igual paga por igual trabajo, a un salario mínimo razonable", etc. Art. II, Sec. 16 de la Constitución del Estado Libre Asociado. Posiblemente chocaría con otras disposiciones de la Carta de Derechos.

■ El hecho de que en una ocasión se determinase que con motivo de un accidente del trabajo un obrero quedó total y permanentemente incapacitado y recibiera la compensación a que la ley le da derecho no debe operar para desalentar o impedir que un patrono le dé empleo en una función que pueda realizar no obstante sus limitaciones físicas o mentales. Si ese patrono paga las correspondientes primas al Fondo del Seguro del Estado no sería justo que el Fondo negara compensación por una nueva incapacidad o

---

[6] Dicha ley dispone para dichas incapacidades totales permanentes pensión vitalicia por una suma igual al 66 2/3% del jornal que percibía el día del accidente, pero no más de $125 mensuales, o a opción del beneficiario, una suma global equivalente a 66 2/3% ó $125, lo que fuere mayor, multiplicado por un máximo de 540 semanas, pero sin que dicha suma global exceda de $18,900. Art. 3, inciso 4 (11 L.P.R.A. sec. 3(4)), primer párrafo.

por la muerte del obrero causádale por un segundo accidente del trabajo. La compensación que una vez se pagó no puede impedir otra compensación. Es como si se tratara de un obrero distinto.

El propio Art. 3, ya citado, al referirse a incapacidades preexistentes, da la tónica para permitir la compensación por el segundo accidente, bajo las condiciones aquí consideradas, en el siguientes *Disponiéndose*:

> Disponiéndose, que en todos aquellos casos en que un obrero sufra la agravación o aumento de una incapacidad preexistente y dicha agravación o aumento resultare en la pérdida total y permanente del miembro u órgano afectado o resultare en la pérdida total y permanente de las funciones fisiológicas generales, el obrero será compensado por la incapacidad total *sin tomar en consideración la incapacidad preexistente aun cuando haya cobrado compensación por ésta;* y Disponiéndose, además, que el coste adicional que resultare de la aplicación de la presente disposición se pagará con cargo al *Fondo de Reserva para Catástrofes* y no se tomará en consideración para los fines del Plan de Clasificaciones Basado en la Experiencia (*Merit Rating System*) que más adelante se provee. (Énfasis nuestro.)

Bajo circunstancias como las presentes en este caso se ha resuelto en otras jurisdicciones como aquí lo hacemos. Véanse *Gurule* v. *Albuquerque Bernalillo Co. Economic Op. B.*, 500 P.2d 1319 (1972); *Hebert* v. *Ford Motor Co.*, 281 N.W. 374 (1938). Los tratadistas sobre el derecho de compensaciones a obreros se pronuncian en igual sentido. Blair, *Guide to Workmen's Compensation*, sec. 11:14, pág. 11-43, dice:

> Cuando un empleado que previamente había sido declarado incapacitado totalmente, debido a causas del trabajo o de otro tipo, de algún modo se las arregla para trabajar a pesar de dicha condición, no se le podrá negar la compensación por una incapacidad mayor o adicional, si ésta es producto de un accidente posterior, aduciéndose simplemente que ya había sido declarado totalmente incapacitado.

El tratadista Larson, 2 *Workmen's Compensation Law,* sec. 59.42(e), señala:

Sec. 59.42(e) Total permanente seguida por total permanente

Finalmente, bajo el mismo tipo de estatuto [que cubre la incapacidad] total permanente, puede haber incluso una compensación total permanente seguida por otra total permanente, como en *Mitchell* v. *Travelers Insurance Company,* un caso del estado de Luisiana. Allí el reclamante sufrió una lesión de disco herniado en 1956 y su reclamación de incapacidad total y permanente se arregló mediante acuerdo. En 1959 se lesionó la espalda nuevamente y le concedieron los beneficios de incapacidad total permanente una vez más. El tribunal sostuvo que podía decirse que el segundo accidente había empeorado una condición latente preexistente, puesto que el reclamante no presentaba síntoma alguno de lesiones en la espalda inmediatamente antes de la segunda lesión.

Como bien aclara Larson, *supra,* sec. 59.43, cuando la ley establece un máximo de compensación a recibirse, se debe interpretar su aplicación de la siguiente manera:

Lo que significa es que si el máximo [de compensación] va a surtir algún efecto, debe entenderse que establece un límite para la compensación que se puede conceder como resultado de daño específico a un miembro particular que se evidencia en un momento dado. Como ya dijimos, después que el tiempo, la recuperación y el adiestramiento hayan hecho su trabajo, un miembro lesionado es susceptible otra vez de sufrir una lesión por la cual podría concederse la compensación máxima.

Sin embargo, notamos que en estos casos de incapacidades sucesivas los tribunales han sido muy cuidadosos al examinar los accidentes ocurridos pues debe evitarse el pago de una doble compensación. Por ello, si ya se ha reconocido y compensado por una incapacidad total permanente por cierto tipo de trabajo, no se otorgará compensación adicional por un accidente sufrido en ese tipo de trabajo, si el daño sufrido es consecuencia del primer accidente por el cual ya fue compensado el obrero.

■ En resumen, adoptamos los siguientes criterios reconocidos en las jurisdicciones estatales para determinar compensabilidad bajo la Ley de Compensaciones a Obreros en casos como el que aquí nos ocupa, en que una persona está empleada no obstante haberse determinado la existencia de una previa incapacidad total permanente, y como consecuencia de un nuevo accidente del trabajo sufre otra incapacidad: primero, la segunda incapacidad debe ser el resultado de otro accidente, no del anterior; segundo, la segunda incapacidad no debe guardar relación con la primera; y, tercero, el empleado no tiene que estar total y permanentemente incapacitado para realizar el tipo de trabajo en que se desempeña cuando sobreviene la segunda incapacidad. Véanse *Montagnino* v. *Allstate Insurance Company*, 336 So.2d 235 (1976); *Gauthier* v. *Employers National Insurance Co.*, La. App., 316 So.2d 769 (1st Cir. 1975); *Scott* v. *Hartford Accident & Indemnity Company*, La. App., 302 So.2d 641 (3rd Cir. 1974); *Church* v. *Tilton*, La. App., 269 So.2d 319 (2nd Cir. 1972); *Whatley* v. *Lummus Company*, La. App., 243 So.2d 922 (3rd Cir. 1970); *Tate* v. *Lumbermen's Mutual Casualty Co.*, 172 So.2d 87 (4th Cir. 1965); *Castee* v. *Great American Indemnity Company*, 81 So.2d 101 (2nd Cir. 1955).

En el caso de autos, la muerte del obrero fue ocasionada en un segundo accidente no relacionado con el primer accidente ni con la condición que determinó su incapacidad. En el año 1966 fue declarado incapacitado total y permanentemente cuando se desempeñaba como policía. El "accidente de trabajo" en que se le causó la muerte es descrito por los recurridos de la siguiente manera: el obrero "se encontraba en gestiones oficiales de su empleo con la co-demandada, y luego de realizar varios cobros, entró en el negocio del Sr. José Berríos, en el Sector Hoya Fría del Barrio Maná de Corozal, para obtener información sobre la dirección de un cliente de los co-demandados. A minutos de estar allí se dirigió hacia él, con un revólver en

la mano el Sr. Andelino Fontánez, disparando sobre el empleado de la co-demandada...".

El empleo del señor Emmanuelli como cobrador de cuentas de la peticionaria, diez años después del primer accidente, y el "accidente" en que se le produjo la muerte, ninguna relación guardan con un empleo anterior ni con su incapacidad. Tampoco es cobrar cuentas el mismo tipo de trabajo que tipifica el trabajo de un policía. En cuanto a la tercera limitación, dice Schneider, 11 *Workmen's Compensation Law*, sec. 2304, págs. 372, 376:

> Se ha señalado que un empleado diestro puede ser declarado incapacitado total y permanentemente y luego conseguir empleo como obrero no diestro y, como resultado de una segunda lesión, incapacitarse permanente y totalmente como no diestro y, por tanto, tener derecho a una segunda declaración de incapacidad total y permanente, pero no puede declarásele incapacitado dos veces si el trabajo que realiza es del mismo tipo.

El hecho de que en este caso se estén solicitando beneficios por muerte en vez de otra declaración de incapacidad total permanente no hace inaplicable a los hechos de este caso los razonamientos elaborados bajo dicha doctrina, pues lo esencial es reconocer que si existe un segundo accidente el mismo es compensable conforme a los criterios impuestos, no empece el hecho de que se haya otorgado una incapacidad total permanente anteriormente.

En los Estados Unidos, en aquellos estados donde el patrono estaría expuesto a un pago o riesgo adicional al emplear a un incapacitado, se han desarrollado *second injury funds* para proteger al patrono. Existen razones poderosas de interés público que justifican la protección del patrono cuando éste emplee, con conocimiento, a una persona incapacitada. Explica Schneider, 12 *Workmen's Compensation Law*, sec. 2544, pág. 334:

> El propósito general de todos estos fondos para segundas lesiones es, según declarara un tribunal de California, "...

promover el empleo de los trabajadores impedidos, facilitando así su rehabilitación, manteniendo su moral alta, y evitando que se conviertan en cargas para el estado debido a que las compensaciones que normalmente se conceden son insuficientes." Esto se logra relevando al patrono de cualquier responsabilidad más allá de la debida a un empleado lesionado que no está físicamente impedido.

En nuestra jurisdicción no existen los llamados *second injury funds*, pero nuestro estatuto sobre compensaciones a obreros ofrece la necesaria protección al patrono mediante la citada cláusula de su Art. 20 sobre exclusividad de remedio.

El citado artículo fue enmendado en 1968 (Ley Núm. 103 de 21 de junio de ese año) para añadirle la frase que aparece en italicas en su transcripción, como sigue:

Artículo 20.—

Cuando el patrono asegure sus obreros y empleados de acuerdo con la presente ley, el derecho aquí establecido para obtener compensación será el único remedio en contra del patrono, *aun en aquellos casos en que se haya otorgado el máximo de las compensaciones o beneficios de acuerdo con la misma;* pero en el caso de accidentes, enfermedades o muerte de los obreros o empleados no sujetos a compensación de acuerdo con esta ley, la responsabilidad del patrono es y continuará siendo la misma que si no existiere la presente ley. (Énfasis nuestro.)

La frase adicionada por la enmienda es aquí inaplicable pues, como hemos señalado, aquí hubo dos accidentes del trabajo separados e independientes uno del otro tanto en sus causas como en sus efectos. El primero, ocurrido en 1966, ocasionó una incapacidad total que fue compensada. El segundo, ocurrido en 1976, ocasionó la muerte del obrero y la compensación que correspondería a sus beneficiarios no ha sido pagada. Mencionamos la enmienda, sin embargo, porque constituye una reafirmación legislativa de la pauta de liberalidad en la interpretación de la Ley de Compensaciones a Obreros.

Por las razones expresadas, constituyendo el incidente que motivó la muerte del señor Emmanuelli un accidente del trabajo compensable por el Fondo del Seguro del Estado, y siendo C.I.T. Financial Services Corp. un patrono asegurado, está protegido por la cláusula de exclusividad de remedio y su moción de desestimación debió prosperar. En consecuencia, *se expedirá el auto de certiorari solicitado y se dictará sentencia que revoque la resolución recurrida y decrete la desestimación de la demanda instada contra la peticionaria.*

El Juez Asociado Señor Martín concurre en el resultado sin opinión.