EPIFANIO RODRÍGUEZ OYOLA y OTROS, demandantes y recurrentes, *v.* DOMINGO MACHADO DÍAZ y OTROS, demandados y recurridos.

*Número:* CE-91-763          *Resuelto:* 3 de junio de 1994

*Ceferino Flores Fernández*, abogado de los demandantes y recurrentes; *Anabelle Rodríguez, Procuradora General, Reina Colón de Rodríguez, Subprocuradora General, y Sylvia Cancio Bigas, Procuradora General Auxiliar*, abogadas de El Pueblo.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

En este recurso exploramos la doctrina de cosa juzgada en el campo administrativo —vertiente entre agencias y tribunales— y la diferencia dimanante de una determinación en cuanto a que un accidente fue durante el curso del empleo para efectos de compensación y la pretendida responsabilidad vicaria del Estado.

I

El 23 de abril de 1988, alrededor de las 5:00 A.M., Epifanio Rodríguez Oyola conducía su vehículo de motor por la Carretera Núm. 172 de Cidra hacia Caguas; en dirección contraria venía, en su automóvil privado, el policía estatal Domingo Machado Díaz, quien lo impactó. Machado Díaz solicitó compensación del Fondo del Seguro del Estado (en adelante el Fondo), que relacionó el accidente con el trabajo y le proveyó hospitalización, medicamentos y dieta. Oportunamente, Rodríguez Oyola, su esposa y la sociedad legal de gananciales demandaron a Machado Díaz en su capacidad personal y oficial, al Estado Libre Asociado (en adelante Estado) y a la Policía.

A petición del Estado y la Policía, la demanda fue desestimada *sumariamente* por el Tribunal Superior, Sala de Caguas (Hon. Julio Berríos Jiménez, Juez), por el funda-

mento de que Machado Díaz no estaba en funciones de su empleo. Los demandantes Rodríguez Oyola *et al.* acudieron oportunamente en revisión ante este Foro. Mediante Sentencia de 16 de marzo de 1990 revocamos y devolvimos el caso al tribunal de origen para una vista en sus méritos.

Subsiguientemente se celebró la vista para determinar si Machado Díaz estaba en funciones oficiales al ocurrir el accidente. Luego de aquilatar la prueba, el tribunal (Hon. Julio Berríos Jiménez, Juez) dictó sentencia en corte abierta declarando con lugar la demanda *sólo* contra Machado Díaz, pues "venía dormido e impactó a la parte demandante en forma negligente; debiéndose dicho accidente única y exclusivamente a la negligencia del conductor, Domingo Machado. En el momento del accidente, éste no estaba en funciones de su empleo como policía ni hay relación alguna entre el trabajo policiaco y el accidente envuelto en este caso". *Minuta* de 19 de agosto de 1991, notificada el 20 de agosto. Anejo I.

Luego de varios incidentes, dicha minuta se notificó y se archivó como sentencia final. A solicitud de los demandantes Rodríguez Oyola *et al.*, acogimos su *certiorari* como una revisión.(¹)

## II

El primer error apuntado constituye la médula del recurso; su examen nos obliga a una breve incursión

---

(¹) En su recurso señalan:

"A) Compete a este Honorable Tribunal resolver si procede desestimar una demanda contra el Estado Libre Asociado de Puerto Rico, aún cuando este mismo (El Estado) [m]ediante la acción directa de sus agencias (Fondo del Seguro del Estado) acepta que la acción de un c[od]emandado envuelto en un accidente es uno considerado por el Estado como accidente del trabajo.

"B) Compete a este Honorable Tribunal resolver si el Tribunal de Instancia erró en su apreciación de la prueba, al dejar de tomar en consideración toda la evidencia to[t]al aceptada con antelación y sometida en el caso.

"C) Compete a este Honorable Tribunal resolver si el Tribunal de Instancia erró al dejar de aquilatar la misma mediante la preponderancia de la prueba." Solicitud de revisión, pág. 9.

sobre la doctrina de cosa juzgada en el campo administrativo. Como dijimos en *Pagán Hernández v. U.P.R.*, 107 D.P.R. 720, 733 (1978), su aplicación tiene tres vertientes, a saber, dentro de esta agencia y sus propias decisiones; e interagencialmente, es decir, de una agencia a otra, y entre las agencias y los tribunales.

■ Invocando jurisprudencia federal, allí expresamos que "[c]uando una agencia administrativa actúa en una capacidad judicial y resuelve controversias de hechos ante sí, *las cuales las partes han podido litigar en forma oportuna y adecuada,* los tribunales no han vacilado en aplicar la doctrina de cosa juzgada para imponer descanso en la controversia. ... Desde entonces la jurisprudencia norte-americana se ha desarrollado en términos de aplicar la doctrina de cosa juzgada cuando las razones para ello estén presentes con toda su fuerza, modificarla cuando sean necesarias algunas alteraciones, y rechazarla cuando las razones en contra de su aplicación sean de mayor peso que aquellas a su favor... Dicho de otro modo, la aplicabilidad de la doctrina en el campo administrativo es flexible y depende de la naturaleza de la cuestión que se plantea en el ámbito judicial". *Pagán Hernández v. U.P.R.*, supra, págs. 734–735. Aclaramos, sin embargo, que no la aplicaremos inflexiblemente "cuando hacerlo derrotaría los fines de la justicia, especialmente si se plantean consideraciones de interés público". *Pagán Hernández v. U.P.R.*, supra, pág. 736. Véase, además, *Banco de la Vivienda v. Carlo Ortiz*, 130 D.P.R. 730 (1992).([2])

■ En resumen, es clara la vigencia de la doctrina de cosa juzgada en los tribunales en virtud de los procedimientos administrativos. Ahora bien, su aplicabilidad no es automática y absoluta. Judicialmente existe el poder de

---

([2]) Hemos abordado la doctrina de cosa juzgada en el contexto administrativo en *P.R.T.C. v. Unión Indep. Emp. Telefónicos,* 131 D.P.R. 171 (1992); *Negrón v. C.I.T. Fin. Serv.,* 111 D.P.R. 657 (1981).

modificar y hasta de rechazar las determinaciones administrativas cuando ese curso sea el más justo y conveniente en orden al interés público. Igualmente subsiste la facultad de evaluar si las partes han podido litigar oportuna y adecuadamente la controversia presentada en el foro administrativo.

## III

*Primero*, el caso de autos presenta una adjudicación de una agencia administrativa —el Fondo— vinculando el accidente automovilístico con el desempeño del trabajo. A dicha decisión se llegó *exclusivamente* a base de la declaración jurada del codemandado afectado Machado Díaz. No se efectuó un proceso cuasi judicial con vista y comparecencia de testigos, sino uno administrativo de tipo no contencioso. La Comisión Industrial, cuerpo cuasi judicial que revisa las decisiones del Administrador, no participó pues nunca esa determinación fue apelada.

*Segundo*, la naturaleza de lo planteado en el foro administrativo es *distinta* a la dilucidada en el recinto judicial; lo razonable es no aplicar la doctrina de cosa juzgada. A nivel administrativo, el propósito era examinar y conceder los beneficios del empleado en virtud del mandato legislativo contenido en el Art. 2 de la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1985 (11 L.P.R.A. sec. 1), a los efectos de que es "de carácter *remedial*[,] se interpret[ará] *liberalmente*, y cualquier duda *razonable* que en su aplicación surgiere en cuanto a la existencia de relación causal entre el trabajo u ocupación del obrero o empleado y la lesión, incapacidad o muerte, o el carácter ocupacional de una enfermedad, *deberá* resolverse a favor del obrero o empleado, o sus beneficiarios". (Énfasis suplido.)

■ Ciertamente, dicha legislación de carácter social refleja claramente un propósito remedial y beneficiario, y a nivel del Administrador, su diseño está carente de todo ele-

mento contencioso y adversativo. Sin embargo, que el estatuto se interprete *liberalmente* y cualquier duda razonable sea a favor del obrero, dista mucho de ser análogo al requisito en los pleitos civiles, en el cual el actor de ordinario tiene que establecer su reclamación por preponderancia de la prueba. Al proceso judicial lo animan propósitos muy distintos; el tipo de prueba necesaria es diferente.(³)

*Tercero*, acoger la tesis de los demandantes Rodríguez Oyola *et al.* quebrantaría los más rectos fines de la justicia y atentaría contra el interés público de dar plena protección a los obreros lesionados. Si la decisión administrativa del Fondo constituyera cosa juzgada en un pleito civil adversativo posterior, sería necesario variar sustancialmente el enfoque en dicho organismo y se menoscabaría la política pública pro obrero.(⁴)

---

(³) En *Jones v. Aldrich Co., Inc.*, 373 S.E.2d 649, 651 (Ga. App. 1988), la Corte de Apelaciones de Georgia expresó que "[c]omo las leyes de compensación a los empleados y las pertinentes a negligencia son tan diferentes, un empleado puede estar dentro del ámbito del empleo para propósitos de compensación a los trabajadores pero no dentro del ámbito del empleo para propósitos de negligencia. Por consiguiente, Aldrich no está impedido de negar responsabilidad vicaria simplemente porque a Reifman se le pagaron beneficios de compensación como empleado". (Traducción nuestra.) Véanse, además: 1 *Larson's Workmen's Compensation Law* Sec. 43.42 (1995); *Beard v. Brown*, 616 P.2d 726 (Wyo. 1980); *Levine v. The Miami Herald*, 7 F.C.R. 278 (Indus. Relations Comm'n 1973), *cert.* denegado, 280 So.2d 682 (1973).

En *Jones v. Aldrich Co., Inc.*, pág. 651, citando a *Beard* Brown, supra, se indicó:

"La compensación a los empleados es una criatura de estatuto y diseñada especialmente para proteger a los trabajadores lesionados en el curso de su empleo. El estatuto está liberalmente construido para proveer cubierta al empleado.

"Dentro del contexto del estatuto, el patrono tiene un deber especial *vis á vis* con los empleados que trabajan para él. Bajo la compensación a los obreros, un empleado está cubierto por lesiones que surgen ... de y en el curso del empleo...' Esto crea un problema de prueba diferente del que se encuentra en el área de negligencia ... Dentro de la esfera de negligencia general, las reglas pertinentes al *ámbito del empleo* son algo diferentes. Esto es así por un número de razones. Un estatuto liberal diseñado para beneficiar a los obreros no está envuelto. No hay relación especial que dé paso a un deber especial como en la compensación a los trabajadores. No hay razón sólida para encontrar responsabilidad sin culpa por razones sociales o económicas." (Traducción nuestra.)

(⁴) Nuestra determinación de que aplicar con rigor la doctrina de cosa juzgada atentaría contra la política pública que dispone igualmente de la contención de Rodríguez Oyola *et al.*, de que el Estado no puede ir contra sus propios actos.

La doctrina de actos propios requiere "(a) una conducta determinada de un sujeto, (b) que haya engendrado una situación contraria a la realidad, esto es, aparente y, mediante tal apariencia, susceptible de influir en la conducta de los demás, y (c) que sea base de la confianza de otra parte que haya procedido de buena fe y que,

■ *Cuarto,* en rigor científico no se dan los requisitos de la doctrina de cosa juzgada exigidos por nuestro ordenamiento jurídico. Para que prospere, entre el caso ya resuelto y el pleito posterior debe haber "la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad en que lo fueron". Art. 1204 del Código Civil, 31 L.P.R.A. sec. 3343. Véanse: *Worldwide Food Dis., Inc. v. Colón et al.,* 133 D.P.R. 827 (1993); *Rodríguez Rodríguez v. Colberg Comas,* 131 D.P.R. 212 (1992); *Lausell Marxuach v. Díaz de Yañez,* 103 D.P.R. 533 (1975).

Como apuntamos anteriormente, en el proceso administrativo el Estado, a través del Fondo, actúa en calidad de benefactor y propulsor del bienestar de los obreros lesionados. En el presente pleito el Estado es parte que sostiene que no responde vicariamente por la negligencia del codemandado Machado Díaz. Tampoco hay identidad de causas. Mientras en el Fondo la causa era determinar administrativamente si Machado Díaz estaba en el curso del empleo para efectos de la compensación procedente, en el de autos adjudicar lo mismo tiene un propósito muy distinto, a saber, si el Estado responde vicariamente.[5]

Precisamente, en *Negrón v. C.I.T. Fin. Serv.,* 111 D.P.R.

---

por ello, haya obrado de una manera que le causaría un perjuicio si su confianza quedara defraudada". *Meléndez Piñero v. Levitt & Sons of P.R.,* 129 D.P.R. 521, 555 (1991). Véase *Int. General Electric v. Concrete Builders,* 104 D.P.R. 871, 878 (1976).

Estos requisitos no se configuran aquí, pues la decisión del Fondo del Seguro del Estado de vincular las lesiones con el empleo, a los efectos únicamente de adjudicar compensación al amparo de un estatuto remedial, per se no está relacionada con la actuación de la Policía y del Estado de tratar de probar que el policía no estaba en funciones. No cabe hablar de que el Estado no puede ir contra sus propios actos.

[5] 2 *Larson,* supra, Sec. 79.72(f) (1995), señala que la aplicación de la doctrina de cosa juzgada requiere no solamente identidad de partes, sino de controversias. Indica que un mero pronunciamiento en un caso de compensación, a los efectos de que la lesión no estaba conectada con el trabajo, no puede controlar un pleito de daños en el cual la controversia principal es la negligencia, ya que la negligencia era inmaterial en el procedimiento de la compensación. En este punto, el mencionado autor cita también el caso de *Jones v. Aldrich Co., Inc.,* supra, resaltando que "el hecho de que la empleada había recibido beneficios de compensación como obrera, por sus lesiones, no establecía que ella estaba dentro del ámbito de su empleo para propósitos de *respondeat superior*". Finalmente, Larson consigna que "[t]ambién se ha resuelto que la cosa juzgada es inapropiada cuando, aunque la controversia pudiera ser similar, el grado de prueba requerido es diferente". (Traducción nuestra.)

657 (1981), un ex miembro de la Uniformada que habia sido declarado total y permanentemente incapacitado por el Fondo y había recibido la compensación correspondiente comenzó a trabajar como cobrador de cuentas para un patrono privado asegurado con el Fondo. Como tal, en el curso de su empleo, fue muerto a balazos. El Fondo negó compensación a su viuda e hijos por entender que la previa declaración de incapacidad lo situaba fuera del mercado laboral. La Comisión Industrial confirmó.

Así las cosas, la viuda e hijos demandaron por daños y perjuicios al patrono, quien pidió sin éxito la desestimación basado en la inmunidad que da la cláusula sobre remedio exclusivo. En *certiorari*, entre otros pronunciamientos, resolvimos que la determinación del Fondo era cosa juzgada entre éste y los beneficiarios del empleado, *mas no en cuanto al patrono demandado*. Dijimos que la decisión administrativa previa no impedía dilucidar, en el ámbito judicial, su corrección en cuanto a la invocada cláusula de exclusividad. Por último, apuntamos que no había identidad entre las personas de los litigantes y la calidad en que lo fueron.

## IV

Descartada la aplicabilidad de la doctrina de cosa juzgada, adjudicaremos conjuntamente los restantes señalamientos. En síntesis, los demandantes Rodríguez Oyola *et al.* aducen que el Tribunal Superior incidió al apreciar y aquilatar erróneamente la prueba. No tienen razón.

El ilustrado foro sentenciador, luego de evaluar el dictamen del Fondo, el testimonio de Machado Díaz, la declaración del policía Miguel A. Díaz —quien investigó el accidente— y de Vicente Méndez Rodríguez, acompañante de Rodríguez Oyola, determinó que Machado Díaz no estaba en funciones de policía. La prueba presentada reflejó que

Machado Díaz *salió* del trabajo hacia su hogar en su automóvil personal y el accidente ocurrió debido a que se quedó dormido.[6] Machado Díaz fue denunciado, se determinó causa probable, e hizo alegación de culpabilidad. El acompañante Méndez Rodríguez declaró que Machado Díaz le pidió que lo sacara del vehículo y posteriormente le admitió que los había impactado porque se había quedado dormido.

El foro sentenciador tuvo ante sí evidencia suficiente para determinar que Machado Díaz no estaba en funciones del empleo; no vemos razón para resolver en lo contrario. Esa apreciación merece nuestra deferencia; en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto. *Rodríguez Amadeo v. Santiago Torres*, 133 D.P.R. 785 (1993); *Gallardo v. Petiton y V.T.N., Inc.*, 132 D.P.R. 39 (1992); *Pérez v. Col. Cirujanos Dentistas de P.R.*, 131 D.P.R. 545 (1992); *Rivera Pérez v. Cruz Corchado*, 119 D.P.R. 8 (1987); *Valencia, Ex parte*, 116 D.P.R. 909 (1986); *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172 (1985); *Pérez Cruz v. Hosp. La Concepción*, 115 D.P.R. 721 (1984); *Morán Simó v. Gracia Cristóbal*, 106 D.P.R. 155 (1977).

*Por los fundamentos expuestos, se dictará sentencia confirmatoria.*

El Juez Asociado Señor Fuster Berlingeri concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Rebollo López no intervino.

---

[6] Sólo hemos reconocido como compensables los accidentes del trabajo suscitados mientras un obrero va de su casa al trabajo y viceversa, y cuando la transportación es provista por el patrono. *López Rodríguez v. Delama*, 102 D.P.R. 254, 256 (1974).

Como regla general, un patrono no es responsable por la conducta de su empleado mientras éste viaja desde y hasta el lugar de trabajo en su propio vehículo. Véase Anotación, "Employer's liability for negligence of employee in driving his own car", 52 A.L.R.2d 287 (1992); 6 *Blashfield Automobile Law and Practice* Sec. 253.92, págs. 268–269 (1966).