Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| GRISEL VÉLEZ VALENTÍN<br><br>Recurrida<br><br>v.<br><br>MONSES MOTORS, LLC; JORGE SOTO<br><br>Peticionaria | KLCE202500028 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Civil núm.: AG2024CV00846 (602)<br><br>Sobre: Daños y Perjuicios; Angustias Mentales; Dolo |

Panel integrado por su presidenta la juez Lebrón Nieves, la jueza Romero García y el juez Rivera Torres.

**Rivera Torres, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico a 25 de febrero de 2025.

Comparecen Monses Motors, LLC y el Sr. Jorge Soto (en conjunto, parte peticionaria) mediante el recurso de *certiorari* de epígrafe solicitándonos que revoquemos una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Aguadilla (TPI), el 15 de noviembre de 2024, notificada ese mismo día. Mediante este dictamen, el foro primario declaró *No Ha Lugar* a la moción de desestimación instada por la parte peticionaria.

Por los fundamentos que exponemos a continuación, se expide el auto de *certiorari* solicitado y se revoca el dictamen recurrido.

**I.**

Del recurso presentado surge que, el 2 de noviembre de 2022, la Sra. Grisel Vélez Valentín (señora Vélez Valentín o parte recurrida) presentó una querella ante el Departamento de Asuntos para el Consumidor (DACo) contra Monses Motors, LLC, Querella núm. MAY-2022-0003302. Luego de varios trámites, el 25 de abril de 2023

se celebró la vista administrativa. El 22 de mayo de 2023, notificada al día siguiente, el DACo emitió una *Resolución* consignando veintiuna (21) *Determinaciones de Hechos,* las cuales, por su pertinencia, detallamos a continuación:[1]

1. El día 5 de mayo de 2022, la parte querellante, adquirió del dealer querellado, el vehículo de motor usado marca Hyundai modelo Elantra del año 2020, con millaje recorrido de 34,086 millas, por el precio de $22,000.00.

2. La querellante pagó al querellado la cantidad de $2,400.00 de pronto pago, incluido en dicho pago la suma de $400.00 por el traspaso del auto a su nombre. La cantidad de $19,000.00 fue financiada a través de Popular Auto, LLC. La querellante, además contrató un seguro para el auto tipo doble interés, a través de Seguros Múltiples, que en caso de ocurrir algún accidente solo le cubriría a la querellante. El contrato de compraventa establece que el pronto fue de $3,000.00, sin embargo la querellante estableció que el pronto pago y el pago del traspaso fue de $2,400.00, según consta del recibo de pago.

3. La querellante al momento de la compraventa fue informada por la parte querellada, que el auto había sido impactado, reconstruido y pintado, en el contrato de compraventa se hace constar que el auto fue arreglado y pintado, y la querellante aceptó adquirir el auto así.

4. Al momento de la venta, el dealer querellado no le notificó a la parte querellante, que el auto usado había sido utilizado como vehículo de alquiler.

5. El vehículo usado adquirido por la querellante salió del dealer querellado con su marbete vigente. El dealer querellado le proveyó a la querellante una licencia provisional del auto, y le indicó a la querellante que en dos meses recibiría la licencia del auto a su nombre.

6. Dicha compraventa, era la primea compraventa de un auto que llevaba a cabo la parte querellante.

7. Para el mes de julio de 2022, la querellante se presentó al dealer querellado a solicitar la licencia del auto traspasado a su nombre. El querellado no tenía disponible la licencia del auto traspasado a nombre de la querellante. En ese momento, el querellado le entregó a la querellante una licencia o permiso para vehículo de motor o arrastre, del auto objeto de la querella, emitido por el Departamento de Transportación y Obras Públicas, a nombre de Caparra Motor Service, Inc. La licencia a nombre de Caparra Motor Service, Inc. identificaba el auto como un Automóvil (Alquiler) Auto Privado.

---

[1] Véase, Apéndice del Recurso, a las págs. 31-33. Énfasis en el original.

8. Para el mes de septiembre de 2022, aún el auto no estaba traspasado a nombre de la querellante.

9. El día 30 de septiembre de 2022, la querellante utilizando el auto adquirido, impactó a otro auto conducido por una dama de nombre Nadja.

10. La querellante acudió al dealer querellado para poder obtener información del seguro obligatorio del auto, ya que aún la unidad no estaba a nombre de la querellante. El auto contaba con un marbete, el cual establecía el pago del seguro obligatorio, y la licencia a nombre de Caparra Motor Service, Inc. El querellado no le pudo proveer quién era la compañía de seguro del auto para poder brindársela a la Sra. Nadja.

11. El auto de la querellante fue reparado con el seguro privado contratado por la querellante, Seguros Múltiples.

12. Para el 11 de octubre de 2022, en documentos oficiales del DTOP, el vehículo objeto de la querella aparecía a nombre de Monses Auto, LLC.

13. El día 13 de octubre de 2022, la querellante acude al Departamento de Transportación y Obras Públicas en busca de información del seguro del auto y del estatus del traspaso del auto a su nombre, ese día el DTOP le hizo entrega a la querellante del Permiso para vehículos de motor o arrases del auto adquirido registrado a su nombre.

14. No existe evidencia del expediente administrativo, que demuestre que el querellado o co-querellado hayan sometido ante el DTOP, los documentos requeridos para el traspaso y registro del auto a nombre de la querellante dentro de 30 días siguientes a la venta.

15. La querellante estaba muy interesada en conocer quién era la compañía aseguradora del auto para poder responderle a la Sra. de nombre Nadja, a quien había chocado.

16. El día 2 de noviembre de 2022, la parte querellante presentó la querella de epígrafe.

17. El día 9 de diciembre de 2022, la parte querellante enmendó la querella de epígrafe, solicitando la cancelación del contrato y devolución del dinero pagado como pronto.

18. Para el 5 de abril de 2023, la querellante se enteró que la Sra. Nadja fue informada de la compañía de seguro Universal Insurance, y que esta se reunió con el querellado Monses para proveerle la información para proceder a reclamar al seguro. Esto fue posible ya que el querellado obtuvo la información del seguro y se la brindó a la Sra. Nadja.

19. Durante la vista administrativa, la querellante enmendó la querella para reclamar la cantidad de $400.00 que le cobró al dealer para traspasar el auto usado a su nombre. En el acto de la vista, la parte

querellada se allanó a la solicitud del reembolso de $400.00 por traspaso reclamada por la querellante.

20. La Regla 20 inciso (f) del Reglamento de Prácticas Comerciales del Departamento de Asuntos del Consumidor, Reglamento Número 9158 de 6 de febrero del 2020, establece lo siguiente:

"En toda transacción de compraventa o arrendamiento de un vehículo de motor nuevo, los gastos de registro o gestiones relacionadas al mismo, no deberán exceder las cuantías establecidas por el Departamento de Transportación y Obras Públicas para lograr el registro de la unidad. Todo gasto atribuible a dicha transacción deberá ser claramente desglosado por el vendedor en el contrato de compraventa. No se podrá cobrar dos veces por la misma gestión. **En el caso de los vehículos de motor usado, el concesionario no podrá cobrar cuantía alguna por concepto de traspaso o gestiones relacionadas al mismo**."

21. La querellante teme que la Sra. de nombre Nadja presente una demanda en su contra, por la tardanza en proveerle la información del seguro de responsabilidad obligatoria.

Asimismo, el foro administrativo razonó que "[a]l vendedor-querellado callar datos, en este caso que el auto fue utilizado como vehículo para alquiler, infringió su deber jurídico, que le impone la ley y el Reglamento de Garantías de Vehículo de Motor, que ocasionó al querellante un perjuicio del que debe responder el querellado. (cita omitida). El Reglamento de Garantías de Vehículo de Motor, le impone una obligación jurídica al vendedor de informar al prospecto comprador si el auto fue usado para alquiler o si había tenido un uso excesivo. Dicha información no fue expresada por el dealer querellado al querellante comprador."[2] En consecuencia, determinó lo siguiente:[3]

Se decreta la resolución del contrato de compraventa del vehículo de motor usado del año 2020 marca Hyundai modelo Elantra, otorgado entre la parte querellante Grisel Vélez Valentín y el querellado Monses Motors, LLC, el día 5 de mayo de 2020.
**La parte querellada, Monses Motors, LLC, deberá reembolsarle a la parte querellante la cantidad de $2,400.00,** dentro del término de 20 días desde la notificación de la presente Resolución, cantidad que devengará el interés legal vigente igualmente, a

---

[2] Véase, Apéndice del Recurso, a la pág. 35.
[3] *Íd.*, a la pág. 37.

> computarse desde la fecha de notificación de la presente Resolución.
>
> Dentro del término antes mencionado, las partes querelladas solidariamente procederán a reembolsarse a la parte querellante, **la cantidad total de los pagos mensuales realizados por la querellante a Popular Auto, LLC, hasta la fecha de la notificación de la presente Resolución**. El total de las sumas a reembolsar a la querellante, devengará el interés legal vigente a computarse desde la fecha de notificación de la presente Resolución.
>
> Dentro del término de veinte (20) días contados a partir de la fecha de la notificación de la presente Resolución, Monses Motors, LLC y Popular Auto LLC, deberán realizar las gestiones necesarias para la cancelación del contrato de venta al por menor a plazos otorgado por la querellante y Popular Auto, LLC, así como relevar del remanente de la deuda pendiente bajo dicho contrato.
> […][Énfasis en el original]

Inconforme, la parte peticionaria solicitó al foro administrativo reconsideración la cual fue rechazada de plano. Oportunamente, dicha parte acudió ante esta *Curia* mediante un recurso de revisión judicial, al cual se le asignó el alfanumérico KLRA202300377. El 18 de septiembre de 2023, un panel hermano dictó una *Sentencia* confirmando el dictamen del foro administrativo. De la misma surge que el referido panel destacó lo siguiente:[4]

> Luego de evaluar la totalidad del expediente, resulta forzoso concluir que el DACo **tuvo ante sí la prueba documental y testifical necesaria para arribar a su determinación.** No hallamos indicios que sugieran que el DACo actuó de manera arbitraria, ilegal, irrazonable o fuera del marco de los poderes que se le delegaron.
>
> Apuntamos, además, que la recurrente formula planteamientos relativos a la apreciación de la prueba o tendentes a sugerir que las determinaciones de hechos no están sostenidas por la prueba desfilada. No obstante, el expediente no cuenta con una transcripción o una exposición narrativa de la prueba desfilada que nos permita concluir contrario a lo que determinó el DACo. Por lo tanto, en ausencia de ello, este Tribunal está obligado a abstenerse de revisar las determinaciones del DACo en su ejercicio de aquilatar la prueba que tuvo ante su consideración.

El 23 de febrero de 2024, el DACo presentó en el Tribunal de Primera Instancia, Sala Superior de Mayagüez, un escrito intitulado *Petición para hacer cumplir orden y justificación legal de competencia en virtud de Ley Especial* en el cual solicitó el cumplimiento de la

---

[4] [Énfasis nuestro]. El 29 de diciembre de 2023, se expidió el mandato.

resolución administrativa, y $1,000 en concepto de honorarios de abogado a favor de la agencia (Caso MZ2024CV00309). Luego de varios trámites procesales, el DACo solicitó el desistimiento con perjuicio. Adujo que la parte peticionaria cumplió con la orden "y ya se entregó el vehículo; por lo cual procede solicitemos el desistimiento con perjuicio de la causa de acción."[5] A esos efectos, el 24 de junio de 2024 el TPI dictó Sentencia declaró CON LUGAR lo solicitado y decretó el archivo con perjuicio, sin especial imposición de costas, gastos ni honorarios de abogado.[6]

Mientras tanto, el 22 de mayo de 2024, la señora Vélez Valentín había presentado una *Demanda* en el Tribunal de Primera Instancia, Sala Superior de Aguadilla, en la cual alegó que la parte peticionaria no había cumplido con el dictamen del DACo. Además, entre otros asuntos, solicitó una compensación de $50,000 por los sufrimientos y angustias mentales ocasionados por la negligencia de la parte peticionaria. A la referida demanda se le asignó el alfanumérico AG2024CV00846.

El 23 de agosto de 2024, la parte peticionaria solicitó la desestimación de la demanda. En esencia, arguyó que al caso de autos le es aplicable la doctrina de cosa juzgada en su vertiente administrativa. Incluso, puntualizó que en la Resolución dictada por el DACo se resolvió que el reclamo por angustias mentales era improcedente y la parte recurrida no presentó ningún recurso de revisión judicial ante este foro intermedio. En fin, destacó que la demanda de epígrafe no expone una reclamación que justifique la concesión de remedio. La referida moción fue acompañada de prueba documental.

---

[5] *Íd.*, a la pág. 52.
[6] *Íd.*, a la pág. 54.

Analizados los escritos de las partes, el TPI dictó la *Resolución* recurrida. En esta, el foro recurrido declaró *no ha lugar* al petitorio desestimatorio. Inconforme, la parte peticionaria solicitó la reconsideración del dictamen, la cual fue declarada *No Ha Lugar,* el 11 de diciembre de 2024, notificada ese mismo día.

Aún insatisfecha con dicha decisión, la parte peticionaria acude ante este foro intermedio mediante el recurso de *certiorari* de epígrafe imputándole al tribunal de primera instancia haber incurrido en los siguientes errores:

> ERRÓ EL TPI DE AGUADILLA AL DECLARAR NO HA LUGAR LA MOCIÓN DE DESESTIMACIÓN PRESENTADA POR LA PARTE PETICIONARIA Y NO DESESTIMAR LA DEMANDA CUYAS CONTROVERSIAS YA FUERON LITIGADAS Y ADJUDICADAS POR UN FORO ADMINISTRATIVO QUE ACTUÓ EN UNA CAPACIDAD JUDICIAL Y DONDE LAS PARTES TUVIERON LA OPORTUNIDAD ADECUADA PARA LITIGAR.

> ERRÓ EL TPI DE AGUADILLA AL OBVIAR TODA LA PRUEBA DOCUMENTAL QUE EVIDENCIABA QUE LA PARTE PETICIONARIA YA HABIA CUMPLIDO CON LO ORDENADO EN LA RESOLUCIÓN DE UN FORO ADMINISTRATIVO Y QUE, POR TANTO, LA PARTE RECURRIDA YA HABÍA OBTENIDO LOS REMEDIOS RECLAMADOS.

> ERRÓ EL TPI DE AGUADILLA AL NO APLICAR LAS DOCTRINAS DE COSA JUZGADA Y ACADEMICIDAD CONTRA LA PARTE RECURRIDA.

> ERRÓ EL TPI DE AGUADILLA AL NO EXPONER LAS RAZONES POR LAS CUALES LA DOCTRINA DE COSA JUZGADA Y ACADEMICIDAD NO APLICAN EN LA CONTROVERSIA DE EPÍGRAFE.

El 15 de enero de 2025, dictamos una *Resolución* concediendo a la parte recurrida el término de diez (10) días para expresarse. El 31 de enero de 2025 dicha parte presentó un *Alegato en Oposición a Recurso de Apelación.* Así nos damos por cumplidos y a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

La Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52, establece taxativamente los asuntos que podemos atender mediante el recurso de *certiorari*. Por consiguiente, al evaluar un recurso resulta necesario determinar, en primera instancia, si el asunto está comprendido entre los que pueden ser revisados por vía del *certiorari* en virtud de lo dispuesto en la referida regla. De concluir este tribunal que la resolución recurrida no está incluida entre las revisables bajo dicha disposición, no procede nuestra intervención.

Por otro lado, aun cuando un asunto esté comprendido dentro de las materias que podemos revisar, de conformidad con la Regla 52.1, *supra,* previo a ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 40, se justifica nuestra intervención, pues distinto al recurso de apelación, este tribunal posee discreción para expedir el auto el *certiorari*. *García v. Padró,* 165 DPR 324, 334 (1999). Por supuesto, esta discreción no opera en el vacío y en ausencia de parámetros que la dirija. *I.G. Builders et al. v. BBVAPR,* 185 DPR 307, 338 (2012); *Rivera Figueroa v. Joe's European Shop,* 183 DPR 580, 596 (2011).

Precisa recordar, que la discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. (citas omitidas)." *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 435 (2013). Así pues, se ha considerado que la discreción se nutre de un juicio racional cimentado en la razonabilidad y en un sentido llano de justicia y "no es función al antojo o voluntad de uno, sin tasa ni limitación alguna. (citas omitidas)." *Íd.* A estos efectos, la Regla 40 de nuestro Reglamento, *supra,* enmarca los criterios que debemos considerar al

momento de determinar si procede que expidamos el auto discrecional *certiorari*. *I.G. Builders et al. v. BBVAPR*, supra. Dicha regla establece lo siguiente:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En síntesis, la precitada regla exige que, como foro apelativo, evaluemos si alguna de las circunstancias enumeradas anteriormente está presente en la petición de *certiorari*. De estar alguna presente, podemos ejercer nuestra discreción e intervenir con el dictamen recurrido. De lo contrario, estaremos impedidos de expedir el auto, y por lo tanto deberá prevalecer la determinación del foro recurrido. Además, es norma trillada que un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. *Pueblo v. Rivera Santiago,* 176 DPR 559, 581 (2009). También, los criterios antes transcritos sirven de guía para poder determinar, de manera sabia y prudente, si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra el caso. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 96-97 (2008).

De otra parte, a pesar de que el Código Civil de 2020, Ley núm. 55-2020, 31 LPRA sec. 5311 *et seq.*, no contiene una disposición

específica que establezca los postulados de la doctrina de cosa juzgada, esta doctrina de raigambre romana se mantiene en nuestro ordenamiento.[7] El efecto de esta doctrina es que la sentencia decretada en un pleito anterior **impide** que en un pleito posterior se litiguen entre las mismas partes y sobre la misma causa de acción y cosas, las cuestiones ya litigadas y adjudicadas, y **aquellas que pudieron haber sido litigadas y adjudicadas con propiedad en la acción previa.** *Méndez v. Fundación*, 165 DPR 253, 267 (2005); *Pagán Hernández v. U.P.R.*, 107 DPR 720, 732-733 (1978); *Mercado Riera v. Mercado Riera*, 100 DPR 940, 950 (1972).

En reiteradas ocasiones, se ha determinado que la aplicación de la doctrina de cosa juzgada es provechosa y necesaria para la sana administración de la justicia. *P.R. Wire Prod. v. C. Crespo & Assoc.*, supra, a la pág. 151. A través de esta se promueve el interés del Estado en ponerle punto final a los litigios, **de manera que estos no se eternicen** y se otorgue la debida dignidad a las actuaciones de los tribunales. *Pérez v. Bauzá*, 83 DPR 220, 225 (1961).

Ahora bien, en el contexto del derecho administrativo, la doctrina de cosa juzgada tiene varias vertientes, a saber: (1) cuando aplica a más de un dictamen de la misma agencia; (2) entre una agencia y otra; y (3) entre una agencia y los tribunales. *Municipio de San Juan v. Bosque Real SE*, 158 DPR 743, 769-770 (2004); *Acevedo v. Western Digital Caribe, Inc.*, 140 DPR 452, 465-466 (1996); *Pagán Hernández v. U.P.R.*, 107 DPR 720, 733 (1978).

Finalmente, la aplicación de la doctrina de cosa juzgada al ámbito administrativo no es absoluta. Al contrario, debe evaluarse a la luz del principio que establece que en cada caso debe hacerse el máximo esfuerzo para que se haga justicia a las partes en los

---

[7] Refiérase al derogado Artículo 1204 del Código Civil de 1930.

méritos. *Rodríguez Oyola v. Machado Díaz*, 136 DPR 250, 253 (1994). En resumen, la doctrina de cosa juzgada debe aplicarse en el contexto administrativo cuando la agencia, actuando en su función adjudicativa, ha resuelto las controversias pertinentes al caso y las partes han podido litigar las mismas de manera adecuada y oportuna.[8]

### III.

En esencia, la parte peticionaria expuso que el TPI erró al no desestimar la *Demanda* bajo los principios de la doctrina de cosa juzgada. Por estar los errores relacionados entre sí, los discutiremos conjuntamente.

De entrada, advertimos que, entre el presente caso ante el tribunal *a quo* y el procedimiento administrativo ante el DACo, existe la perfecta identidad de las partes y las causas reclamadas por la recurrida son las mismas en ambos procesos. Más aún, existe un decreto de un ente administrativo adjudicador resolviendo las mismas. Por lo que, se cumple a cabalidad los criterios requeridos por la doctrina de cosa juzgada.

Relativo a lo anterior, precisa señalar que, en el escrito en oposición ante nuestra consideración, la señora Vélez Valentín reconoce que el DACo adjudicó la reclamación sobre la nulidad del contrato de compraventa, no así la acción de los daños.

En contravención a esto último expresado por la recurrida, de la Resolución administrativa notificada el 23 de mayo de 2023, surge claramente que el DACo sí resolvió y adjudicó la reclamación en daños y perjuicios instada en la demanda de epígrafe. Al respecto, la agencia decretó diáfanamente que:[9]

> "[…], la parte querellante **no presentó prueba robusta sobre los alegados problemas emocionales o daños sufridos** como consecuencia de que el auto no estaba

---

[8] *Rodríguez Oyola v. Machado Díaz*, 136 DPR 250, 253 (1994).
[9] Apéndice del Recurso, a la pág. 37.

registrado a su nombre para la fecha del accidente, ya
que tenía la información del seguro de responsabilidad
obligatoria para poder responderle a la perjudicada del
accidente, la Sra. Nadja. Por su parte, la solicitud de la
querellante, de que el querellado responde por las
angustias de la querellante si la Sra. Nadja presenta
una demanda en su contra debido al asunto del
accidente, **son especulaciones** porque nada de ello ha
sucedido. Por lo que, la reclamación sobre
resarcimiento de daños no procede." [Énfasis nuestro]

De otra parte, no obviemos que en el caso MZ2024CV00309, el DACo solicitó el desistimiento con perjuicio dado que el vehículo ya había sido entregado y se había dado cumplimiento a la orden emitida. El 24 de junio de 2024, el TPI dictó una sentencia concediendo lo solicitado y decretó el archivo sin especial imposición de costas, gastos ni honorarios de abogado. Dicho dictamen no fue recurrido, ni solicitada su reconsideración. No obstante, en la demanda de epígrafe, la señora Vélez Valentín alegó que la parte peticionaria no ha cumplido con la resolución del DACo, lo cual, como ya señalamos, fue resuelto en el caso MZ2024CV00309.

En fin, reiteramos que, contrario a los argumentos expuestos por la recurrida en el alegato en oposición, la reclamación en daños y perjuicios como consecuencia de la actuación de la parte peticionaria fue adjudicada por el DACo, y los demás remedios concedidos por dicha agencia en la *Resolución* emitida el 22 de mayo de 2023 fueron cumplidos. De hecho, la señora Vélez Valentín expresa en su escrito de oposición que "como bien menciona la parte demandada-apelante que cumplió con su obligación de $9,987.82 por concepto devolución de pronto, mensualidades pagadas e intereses acumulados."[10]

En virtud de lo antedicho, enfatizamos que el DACo, en su función adjudicativa, resolvió todas las controversias pertinentes al caso ante el tribunal recurrido y en el proceso administrativo las

---

[10] Véase, *Alegato en Oposición a Recurso de Apelación*, a la pág. 14.

partes tuvieron la oportunidad de litigar las mismas de manera adecuada y oportuna. Por tanto, recalcamos que resulta procedente emplear la doctrina de cosa juzgada, ya que esta tiene precisamente el efecto de evitar que se litiguen de nuevo asuntos que fueron o que pudieron haber sido litigados y adjudicados en el pleito anterior ante la agencia. Así pues, presentes los elementos de la doctrina de cosa juzgada, el foro primario está impedido de atender la reclamación de la recurrida.

En fin, erró el foro de primera al no aplicar la doctrina de cosa juzgada.

**IV.**

Por los fundamentos previamente expuestos, se expide el auto de *certiorari* solicitado y se revoca el dictamen recurrido. En consecuencia, se ordena el archivo de la *Demanda* con perjuicio.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones