ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| MARIDZA RIVERA MONTAÑEZ<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE DESARROLLO ECONÓMICO Y COMERCIO; OFICINA DE GERENCIA DE PERMISOS **LHEE, INC., H/N/C PA'L 24 STEAKHOUSE & TAPAS**<br><br>Recurridos | KLRA202400095 | *RECURSO DE REVISIÓN* procedente de la Oficina de Gerencia de Permisos<br><br>Caso núm.: 2022-444154-SDR-014192<br><br>Sobre: Impugnación de Permiso de Construcción |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores

Rodríguez Flores, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de febrero 2025.

Comparece la Sra. Maridza Rivera Montañez (recurrente o Sra. Rivera Montañez), mediante el recurso de revisión administrativa de epígrafe. En este, nos solicita la revocación de una *Resolución de Revisión Administrativa* emitida el 14 de febrero de 2024,[1] por la División de Revisiones Administrativas de la Oficina de Gerencia de Permisos (DRA-OGPe). Mediante dicha resolución, una jueza administrativa acogió la recomendación de un oficial examinador y declaró *no ha lugar* la solicitud de revisión incoada por la recurrente, en la que esta impugnó la aprobación del permiso de construcción[2] otorgado a favor de LHEE, INC., h/n/c PA'L 24 Steakhouse & Tapas (LHEE o recurridos).

Por los fundamentos expuestos a continuación, confirmamos la resolución recurrida.

---

[1] La *Resolución* fue notificada y archivada ese mismo día.
[2] Permiso de Construcción Certificado 2022-434921-PCOC-039898.

**I.**

Según surge del expediente de autos, el 12 de octubre de 2023, LHEE, por conducto del Ing. Nelson Bonet, presentó ante la Oficina de Gerencia de Permisos (en adelante OGPe), una solicitud de permiso de construcción para la legalización de tres vagones para uso accesorio de baño, barra y cocina. Los tres vagones se proponen en el segundo nivel del restaurante PA'L 24 Steakhouse & Tapas, el cual cuenta con permiso único de uso 2021-381406-PU-087606. La propiedad está localizada en la Carr. 115 Km. 6.4, Bo. Caguabo, Añasco, Puerto Rico. Además, ubica en un distrito calificado Comercial Turístico (C-T), antes Comercial Turístico Liviano (CT-L), según el Mapa de Calificación de Suelos del Municipio Autónomo de Añasco.

Del expediente administrativo surge un certificado de inspección del edificio, suscrito por el Dr. Miguel Santiago Meléndez, ingeniero estructural, en el que éste indica que inspeccionó la propiedad el 29 de septiembre de 2023, y certifica que la propiedad de PA'L 24 Steakhouse & Tapas es una estructuralmente segura.[3] También obra una certificación suscrita por el Ing. Nelson Bonet Lorenzo el 23 de octubre de 2023, que indica que el 22 de octubre de 2023 colocó en la propiedad el rótulo que notifica sobre la presentación de la solicitud.

Luego de evaluar la información contenida en la solicitud, el 31 de octubre de 2023, OGPe emitió el permiso de construcción número 2022-434921-PCOC-039898, para:

> El proyecto consiste en la construcción de tres vagones sobre techo para uso comercial (Legalización 3 Vagones (uso accesorio: baño, barra y cocina) Restaurante Pa'l 24 Steakhouse & Tapas.) en Hormigón Armado y Bloques-Madera y Combinaciones – Acero Estructural Presupuesto de Demolición: $30,000.00 Área bruta de piso: 1327.60 Metros cuadrados."[4]

---

[3] Apéndice del recurso, págs. 173-180.
[4] *Íd.* pág. 39.

Inconforme con lo anterior, el 16 de noviembre de 2023, la Sra. Rivera Montañez, presentó una *Solicitud de Revisión Administrativa* ante la DRA-OGPe.[5] En su solicitud argumentó, entre otras cosas, que no fue notificada de la solicitud y concesión del permiso de construcción[6] en cuestión.[7] De igual forma, adujo que sobre esta construcción existen dos sentencias emitidas por el Tribunal de Primera Instancia (TPI), razón por la cual planteó la defensa de cosa juzgada, en su modalidad de impedimento colateral por sentencia.[8]

El 27 de noviembre de 2023, la Sra. Rivera Montañez presentó una solicitud para que se revocara el permiso concedido de manera sumaria, sin necesidad de vista, por no habérsele notificado sobre la solicitud y la concesión del permiso de construcción. El 20 de diciembre de 2023, LHEE presentó su respuesta a la solicitud de revisión y una oposición a la solicitud de resolución sumaria.

Para dilucidar la controversia, el oficial examinador celebró la vista los días 21 de diciembre de 2023 y 4 de enero de 2024. La Sra. Rivera Montañez compareció acompañada de su representante legal. La agencia recurrida (OGPe) y la parte proponente-concesionaria del permiso (LHEE), asistida por el Ing. Nelson Bonet, comparecieron representadas por sus respectivos abogados. Los representantes argumentaron lo relacionado a la solicitud de sentencia sumaria, el oficial examinador dio por sometido el asunto y continuó con la vista en los méritos.

Según surge de la resolución recurrida, en la vista administrativa, y en lo atinente, la recurrente, Sra. Rivera Montañez, declaró que la propiedad en donde se propone la acción queda al lado de su residencia. Afirmó que se enteró de la solicitud de permiso

---

[5] *Íd.*, págs. 81-91.
[6] Permiso de Construcción Certificado 2022-434921-PCOC-039898.
[7] Apéndice del recurso, pág. 85.
[8] *Íd.*, pág. 88.

de construcción cuando vio el rótulo de aviso de presentación de la solicitud, pero que no le notificaron directamente del asunto. Indicó que la construcción afecta su privacidad, porque queda al lado de las ventanas de su habitación y sala.

Por la parte proponente-concesionaria, declaró el Ing. Nelson Bonet. Indicó que el permiso es uno de carácter ministerial que cumple con todos los parámetros del distrito en el que ubica el inmueble, razón por la cual solamente se requiere ubicar en la propiedad el rótulo de aviso de presentación del permiso. Explicó que los tres vagones están en el segundo nivel de la estructura, vista desde la Carr. 115. Manifestó que el salón comedor está en el primer nivel y la terraza en el segundo nivel. Expuso que la altura en número de plantas de la estructura cumple la definición establecida en el Reglamento Conjunto.

Ambos testigos fueron contrainterrogados. El oficial examinador no dio paso a la presentación de la testigo de refutación de la recurrente.

En cuanto a la prueba documental, por la parte recurrente, se marcaron los siguientes *exhibits*: (1) *exhibit* 1, varias fotografías; (2) *exhibit* 2, sentencia parcial emitida por el TPI, Sala de Mayagüez, el 17 de mayo de 2020. Se tomó conocimiento de la orden de hallazgos de la Junta de Planificación número 2021-SRQ-007531 del 9 de diciembre de 2021, y de las sentencias parciales emitidas por el TPI, Sala de Mayagüez, el 18 de marzo de 2022 en el caso civil número MZ2022CV00156, y el 30 de agosto de 2023 en el caso civil número MZ2023CV01386, ambas sobre estorbo público, violación a la intimidad e *injunction*. Además, las partes estipularon la foto del rótulo (anejo 6 de la solicitud de revisión).

Luego de evaluar la prueba, el 14 de febrero de 2024, la DRA-OGPe emitió la *Resolución de Revisión Administrativa* objeto del

presente recurso.[9] En esta, una jueza administrativa acogió la recomendación de un oficial examinador. De tal forma, concluyó que el permiso de construcción es uno de carácter ministerial, para el que solamente se requiere la colocación del rótulo de aviso de presentación de la solicitud, y no la notificación individual a los colindantes de la propiedad donde se propone la acción. Por tanto, resolvió que, al haberse presentado evidencia de que se instaló el rótulo de presentación de la solicitud de permiso en la propiedad en la que se propone la acción, el proponente había cumplido con la reglamentación aplicable a la notificación de la solicitud; por lo que la Sra. Rivera Montañez– quien en efecto reconoció haber visto el referido rótulo– había quedado debidamente notificada de la solicitud del permiso en cuestión. La resolución aclaró que la Sra. Rivera Montañez no había solicitado intervenir en el trámite de aprobación del permiso de construcción objeto de construcción, por lo cual, tampoco correspondía ser notificada como parte interventora.

A su vez, tomando en consideración los parámetros de construcción establecidos para el distrito C-T, la DRA-OGPe coligió que el uso comercial de restaurante está ministerialmente permitido en dicho distrito y que el proyecto cumple con las disposiciones legales y reglamentarias aplicables. A tales efectos, puntualizó que la estructura donde se propone el proyecto cuenta con un semisótano, apartamentos, y el restaurante objeto de la controversia. El restaurante está a nivel de la Carr. 115. Desde la rasante[10], la construcción se propone en el segundo nivel del edificio y, conforme los usos permitidos para ese distrito, el servicio de restaurante está autorizado en los primeros dos niveles de una

---

[9] *Íd.*, págs. 2-21.
[10] Definida por el Reglamento Conjunto de 2023 como la "línea de nivel considerada en su inclinación o paralelismo respecto del plano horizontal de una vía o interior de una propiedad". Glosario de Términos, inciso R-3.

estructura. La DRA-OGPe puntualizó que no se había presentado evidencia para rebatir la certificación realizada por el ingeniero estructural.

En cuanto al planteamiento de cosa juzgada -en su modalidad de impedimento colateral por sentencia- la DRA-OGPe coligió que los recursos instados ente el TPI, sobre *injunction* estatutario, se limitaron a determinar si la construcción contaba o no con un permiso de construcción. En dichas causas, no se evaluó si la construcción cumplía con los parámetros de construcción establecidos en el *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios,* Núm. 9473, de 16 de junio de 2023 (Reglamento Conjunto de 2023).[11] Además, el tribunal nada dispuso sobre una prohibición para construir u obtener un nuevo permiso. Ante tales circunstancias, la DRA-OGPe determinó que la doctrina de cosa juzgada en la modalidad de impedimento colateral por sentencia no aplica a la controversia planteada en el caso de autos.

En fin, toda vez que la Sra. Rivera Montañez no logró rebatir la presunción de corrección y regularidad de la determinación que concedió el permiso de construcción, la DRA-OGPe declaró *no ha lugar* la solicitud de revisión incoada por la recurrente, en la que esta impugnó la aprobación del permiso de construcción otorgado a favor de LHEE.

Inconforme con la anterior determinación, el 26 de febrero de 2024, la Sra. Rivera Montañez acude ante esta Curia y señala que la DRA-OGPe cometió los siguientes señalamientos de error:

> Erró la DRA-OGPe al no reconocer un hecho esencial que fue litigado y adjudicado mediante sentencia final, en dos litigios anteriores ante este Hon. Tribunal General de Justicia, para evitar litigios innecesarios y

---

[11] Entendemos que la resolución contiene un error tipográfico en su pág. 15, cuando único hace referencia al Reglamento Conjunto de 2020. Como es conocido, el 16 de junio de 2023, el Tribunal Supremo emitió una Opinión *Per Curiam*, en el caso *Martínez Fernández et al. v. OGPe et al.*, 212 DPR 285 (2023), en la que declaró la nulidad de los Reglamentos Conjuntos de 2019 y 2020.

decisiones inconsistentes bajo la doctrina de cosa juzgada en la modalidad de impedimento colateral por sentencia y, al contrario, contravenir la deferencia a la corrección de las determinaciones de hechos del tribunal, negándoles su eficacia y creando decisiones inconsistentes.

Erró la DRA-OGPe, sin autoridad para ello, al validar la expedición por la OGPe del permiso impugnado y confirmado por la primera, a pesar que la otorgación del permiso impugnado en este distrito comercial turístico liviano(CT-L) para ese tipo de obra era un asunto discrecional, que requería una solicitud de variación a la agencia (porque el mismo no se contempla ni como una excepción para este distrito de calificación), ameritaba una consulta de ubicación y requería determinaciones de hecho y conclusiones de derecho de la Junta Adjudicativa en su resolución.

(Mayúsculas y negrillas suprimidos).

El 1 de abril de 2024, LHEE presentó su *Alegato en Oposición a Recurso de Revisión.* Luego, y en cumplimiento con lo ordenado por este Tribunal, el 18 de abril de 2024, la OGPe presentó una copia certificada del expediente administrativo.

El 26 de abril de 2024, la OGPe instó su *Alegato en Oposición de la Oficina de Gerencia de Permisos al Recurso de Revisión Judicial al Honorable Tribunal de Apelaciones.*

Con el beneficio de la comparecencia de las partes y de la copia certificada del expediente administrativo, procedemos a resolver.

**II.**

**A.**

El derecho administrativo puertorriqueño requiere que, al revisar las determinaciones administrativas, auscultemos si sus decisiones fueron emitidas en virtud de los poderes delegados a la agencia y conforme a su política pública.[12]

En esa encomienda, nos corresponde "otorgar amplia deferencia a las decisiones emitidas por las agencias

---

[12] *Capó Cruz v. Jta Planificación et al.*, 204 DPR 581, 590 (2020); *Torres Rivera v. Policía de PR,* 196 DPR 606 (2016).

administrativas."[13] Esto se debe a la presunción de legalidad y corrección que existe a favor de los procedimientos y determinaciones realizadas por los entes gubernativos.[14] Ese axioma doctrinario responde "a la experiencia y pericia que se presume tienen dichos organismos para atender y resolver los asuntos que le han sido delegados."[15]

A tono con lo anterior, para ejercer nuestra función revisora tenemos que escrutar los siguientes aspectos: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y, (3) si las conclusiones de derecho fueron correctas.[16]

Consiguientemente, no descartaremos el criterio del organismo administrativo, a menos que nos encontremos con alguna de las situaciones previamente articuladas o la agencia haya actuado arbitraria, ilegal o irrazonablemente.[17] (Énfasis nuestro). Con tales principios como norte, aunque exista más de una interpretación en cuanto a los sucesos fácticos, procederá validar la determinación articulada por la agencia.[18] Por ende, en materia de revisión judicial, la deferencia que merecen las agencias en las aplicaciones e interpretaciones de las leyes y reglamentos que administran solo cederá cuando estemos frente a alguna de las mencionadas circunstancias.[19]

La Sec. 5.4 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, según enmendada,[20] señala que "[t]oda persona a la que una agencia

---

[13] *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019).
[14] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018).
[15] *Íd.*
[16] *Capó Cruz v. Jta Planificación et al.*, supra, pág. 591; *Asoc. Fcias v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010).
[17] *Capó Cruz v. Jta Planificación et al.*, supra; *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177 (2009).
[18] *Torres Rivera v. Policía de PR*, supra, pág. 628.
[19] *Capó Cruz v. Jta Planificación et al.*, supra; *Rolón Martínez v. Supte. Policía*, supra.
[20] 3 LPRA sec. 9601, *et seq.*

deniegue la concesión de una licencia ... o gestión similar tendrá derecho a impugnar la determinación de la agencia por medio de un procedimiento adjudicativo".[21]   Precisamente, la adjudicación de una agencia, según definido por la LPAU, es el "pronunciamiento mediante el cual una agencia determina los derechos, [las] obligaciones o [los] privilegios que correspondan a la parte".[22]

**B.**

La Ley Núm. 161-2009, según enmendada, conocida como la *Ley para la Reforma del Proceso de Permisos de Puerto Rico* (Ley Núm. 161-2009),[23] fue creada a los fines de establecer el marco legal y administrativo que regirá la solicitud, evaluación, concesión y denegación de permisos por el Gobierno de Puerto Rico.[24] Mediante la aprobación de esta ley se creó la OGPe, como entidad encargada de la evaluación, concesión o denegación de determinaciones finales y permisos relativos al desarrollo y uso de terrenos.[25]

Debido a la pertinencia en esta controversia de los conceptos que se definen a continuación, es necesario visitar el Art. 1.5 de la antes citada ley[26], la cual, en lo que nos concierne, dispone lo siguiente:

> (14) *Consulta de ubicación.* - Es el procedimiento ante la Oficina de Gerencia de Permisos o los Municipios Autónomos con Jerarquía de la I a la V, a los cuales se le haya delegado dicha facultad por medio del Convenio de Transferencia, para que evalúen, pasen juicio y tomen la determinación que estimen pertinente sobre propuestos usos de terrenos que no son permitidos ministerialmente y que no pueden considerarse mediante otro mecanismo. En áreas no calificadas incluye propuestos usos de terrenos que por su naturaleza y complejidad requieran un grado mayor de análisis.
>
> [...]
>
> (26) *Discrecional.* - Describe una determinación que conlleva juicio subjetivo por parte de la Junta Adjudicativa, del Secretario Auxiliar o un Municipio

---

[21] 3 LPRA sec. 9684.
[22] 3 LPRA sec. 9603, inciso (b).
[23] 23 LPRA sec. 9011 *et seq.*
[24] Véase, *Spyder Media Inc. v. Mun. de San Juan,* 194 DPR 547, 552 (2016).
[25] *Horizon v. Jta Revisora, RA Holding,* 191 DPR 228, 236 (2014).
[26] 23 LPRA sec. 9011.

Autónomo con Jerarquía de la I a la V sobre la forma en que se conduce o propone una actividad o acción. Éstos utilizan su conocimiento especializado, discreción y juicio para llegar a su determinación, ya que esta determinación considera otros asuntos además del uso de estándares fijos o medidas objetivas. El Secretario Auxiliar o el Municipio Autónomo con Jerarquía de la I a la V, puede utilizar juicios subjetivos discrecionales al decidir si una actividad debe ser realizada o cómo debe realizarse.

[...]

(48) *Ministerial.* - Describe una determinación que no conlleva juicio subjetivo por parte de un funcionario público o Profesional Autorizado sobre la forma en que se conduce o propone una actividad o acción. El funcionario o Profesional Autorizado meramente aplica los requisitos específicos de las leyes o reglamentos a los hechos presentados, pero no utiliza ninguna discreción especial o juicio para llegar a su determinación, ya que esta determinación involucra únicamente el uso de estándares fijos o medidas objetivas. El funcionario no puede utilizar juicios subjetivos, discrecionales o personales al decidir si una actividad debe ser realizada o cómo debe ser realizada. **Por ejemplo, un permiso de construcción sería de carácter ministerial si el funcionario sólo tuviera que determinar si el uso es permitido en la propiedad bajo los distritos de calificación aplicables, si cumple con los requisitos de edificabilidad aplicables (e.g., Código de Construcción) y si el solicitante ha pagado cualquier cargo aplicable y presentado los documentos requeridos**; el Reglamento Conjunto de Permisos contendrá una lista en la que se incluyan todos los permisos que se consideran ministeriales. (Énfasis nuestro).

La Ley Núm. 161-2009, *supra,* reconoce que podrá emitirse un permiso de uso de forma automática cuando un Ingeniero o Arquitecto Licenciado al amparo de la Ley Núm. 135 de 15 de junio de 1967, según enmendada, conocida como "Ley de Certificación de Planos o Proyectos", certifique lo siguiente:

1) que el uso solicitado es permitido en la calificación que ostenta el predio; 2) que cumple con los parámetros del distrito de calificación; 3) que cumple con los requerimientos de prevención de incendios y salud ambiental y 4) cualquier otro requisito que se disponga mediante Reglamento.[27]

A su vez, el Art. 9.9 de la Ley Núm. 161-2009 expresamente excluye de la obligación de la instalación de un rótulo de

---

[27] 23 LPRA sec. 9018o.

presentación las solicitudes para la expedición de un permiso ministerial.[28]

## c.

Hay que hacer notar, que el Art. 15.1 de la Ley Núm. 161-2009, *supra*, le ordena a la Junta de Planificación, que, con la colaboración de la Oficina de Gerencia de Permisos, promulgue un Reglamento Conjunto para establecer y aplicar, entre otros asuntos, "la evaluación y expedición de determinaciones finales, permisos y recomendaciones relacionados a obras de construcción y uso de terrenos".[29]

Cónsono con lo anterior, el 16 de junio de 2023, se adoptó el Reglamento Núm. 9473, titulado *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios* (Reglamento Conjunto de 2023). Como cuestión de umbral, en el inciso (d) de la sección 2.2.1.3 del Reglamento Conjunto de 2023, se reconoce que los permisos ministeriales se otorgarán para los usos específicamente permitidos en cada distrito y siempre tienen que cumplir cabalmente con varios parámetros, a saber: (1) calificación; (2) usos; (3) altura; (4) tamaño del solar; (5) densidad; (6) área de ocupación; (7) área bruta de piso; (8) patios (delantero, laterales y posterior); (9) espacios de estacionamientos, y (10) área de carga y descarga.

Conforme al inciso (c) de la sección antes citada, los permisos de esta naturaleza se expedirán "únicamente cuando la estructura o uso para lo que se solicite el permiso estén en completa armonía y conformidad con las disposiciones de este Reglamento".

También, la Sec. 2.2.3.2 del Reglamento Conjunto de 2023, establece una lista de los proyectos que requieren una consulta. En

---

[28] 23 LPRA sec. 9019h.
[29] 23 LPRA sec. 9025.

específico, se requiere la presentación de una consulta de ubicación en las siguientes instancias:

> a. Propuestos usos de terrenos que no son permitidos ministerialmente por la reglamentación aplicable en áreas calificadas.
>
> b. Proyectos en los que se propone una densidad o intensidad mayor a la que permite el distrito en que ubica y no cumplen con el uso permitido en el distrito.
>
> c. Propuestos usos de terrenos de carácter regional, subregionales y suprarregionales.
>
> d. Propuestos usos de terrenos que por su naturaleza o intensidad requieren una ubicación especial o particular para atender situaciones especiales, tales como proyectos industriales como procesamiento de material de corteza terrestre, estaciones de trasbordo o de disposición final de desperdicios sólidos, entre otros.
>
> e. Toda mejora pública excluyendo las transacciones de terrenos públicas exceptuando aquéllas que se declaran exentas mediante resolución por la JP o aquellas incluidas en la Regla 2.2.8 de este Reglamento Conjunto.
>
> f. Proyectos en los que se propone una densidad o intensidad mayor a la que permite el distrito en que ubica o requieren un diseño particular para atender situaciones especiales, pero que no hay un distrito específico que tenga los parámetros necesarios.
>
> g. Requerirán la presentación de consulta los proyectos en los que se proponga la construcción de una estructura que no satisfaga los requisitos de este Reglamento o el Código de Construcción adoptado por la OGPe en cuanto a parámetros de construcción y que, debido a la condición del solar, la ubicación especial o el uso particular, confronte una dificultad práctica y amerite una consideración especial, siempre que no se cree un perjuicio a las propiedades vecinas.

A su vez, la Sec. 2.7.4.2 establece lo referente a la solicitud para conformar o autorizar el uso de obras de estructuras construidas sin permiso. En particular, dispone que;

> Los planos de estructuras construidas para los cuales **no se haya aprobado un permiso de construcción**, bajo las disposiciones de este Reglamento Conjunto, podrán presentarse, **mediante la solicitud correspondiente para conformar y autorizar el uso de obras de estructuras construidas sin permisos**. (Énfasis nuestro).

Por otro lado, el Capítulo 3.7 del Reglamento Conjunto de 2023 dispone lo relacionado con los permisos únicos, los cuales, según los incisos (a) y (b) de la Sec. 3.7.1.1, consolidan e incorporan

varios trámites en una solicitud y deben obtenerse para todo edificio nuevo o existente con usos no residenciales.[30]

Así las cosas, de acuerdo con la Sec. 3.7.1.9 del Reglamento Conjunto de 2023, un permiso de esta índole puede ser expedido de forma automática por la OGPe o un Municipio Autónomo con Jerarquía de la I a la III cuando un Ingeniero o Arquitecto Licenciado certifique que:

> 1. que el uso solicitado es permitido en la calificación que ostenta el predio;
>
> 2. que cumple con los parámetros del distrito de calificación;
>
> 3. que cumple con los requerimientos de prevención de incendios y licencia sanitaria;
>
> 4. que cumpla con la exclusión categórica o cumplimiento ambiental aprobado:
>
> 5. que presente una recomendación de la Entidad Gubernamental Concernida en la cual se disponga que el permiso de uso para la actividad propuesta cumple con los requisitos aplicables y contenidos en la reglamentación o ley que aplican la operación o actividad propuesta.[31]

Establecido lo anterior, es entonces necesario repasar lo relacionado con los distritos clasificados como Comercial Turístico y Comercial Turístico Liviano en el Reglamento Conjunto de 2023. La Sec. 6.1.12.1 Comercial Turístico (C-T), establece como propósitos para este tipo de distrito que;

> a. Este distrito comercial en las Zonas de Interés Turístico se establece para promover el desarrollo ordenado y estético, para clasificar áreas comerciales y residenciales de intensidad intermedia y semi-alta.
>
> b. Los usos comerciales permitidos sirven de apoyo, complementan o suplen las necesidades de las comunidades y visitantes sin que las actividades comerciales perjudiquen de forma significativa el carácter turístico que debe prevalecer en la zona.
>
> c. Por su localización y disponibilidad de infraestructura incluye terrenos que pueden desarrollarse o se han desarrollado a una muy alta intensidad.

---

[30] Véase *Voili Voila Corp. et al v. Mun. Guaynabo*, 213 DPR ___ (2024), 2024 TSPR 29, resuelto el 26 de marzo de 2024.
[31] *Íd.*

Finalmente, la Sec. 6.1.12.2 ilustra lo referente a los usos permitidos en el referido distrito.

a. Los usos a permitirse en este distrito serán compatibles con los propósitos del mismo y con las disposiciones de esta Regla.

b. **Usos comerciales o de servicios se permitirán en los primeros dos niveles**.

c. Sobre el segundo nivel se permitirán usos residenciales y de hospederías.

(Énfasis nuestro).

## D.

El Código Civil de 2020, Ley Núm. 55-2020, no contiene una disposición que contenga los postulados de cosa juzgada. Sin embargo, se mantiene en nuestro ordenamiento dicha doctrina de enraizamiento romano.[32] Entre otras cosas, el efecto inexorable de la doctrina de cosa juzgada es que la sentencia decretada en un pleito anterior imposibilita que en un pleito posterior se litiguen entre las mismas partes y sobre la misma causa de acción, las cuestiones ya litigadas y adjudicadas, y aquellas que pudieron haber sido litigadas y adjudicadas en la acción primera.[33]

En los procesos administrativos esta doctrina tiene aplicabilidad cuando se satisfacen los siguientes requisitos: (1) la agencia debe actuar en su función adjudicativa, donde resuelve las controversias ante sí; y (2) las partes deben haber tenido una oportunidad adecuada para defenderse.[34] Es importante señalar, que esta defensa afirmativa puede manifestarse de tres formas en la esfera administrativa: (1) dentro de la misma agencia; (2) interagencial, o sea, entre las agencias; y (3) entre las agencias y los tribunales.[35]

---

[32] *P.R. Wire Prod. v. C. Crespo & Asoc.*, 175 DPR 139 (2008); A manera ilustrativa véase el Artículo 1500 del Código Civil (ed. 2020), 31 LPRA sec. 10644. El mismo dispone que "[l]a transacción produce los efectos de la cosa juzgada".

[33] *Méndez v. Fundación*, 165 DPR 253 (2005); *Pagán Hernández v. U.P.R.*, 107 DPR 720, 732-733 (1978).

[34] *Pagán Hernández v. U.P.R.,* supra.

[35] *Rodríguez Oyola v. Machado Díaz*, 136 DPR 250, 253 (1994).

Por otro lado, el Alto Foro ha decretado que la aplicación de esta defensa no es absoluta ni automática. Ésta no se aplicará cuando estén **presentes consideraciones de orden público**; o cuando su aplicación derrota los fines de la justicia y produce resultados absurdos.[36] (Énfasis nuestro). En otras palabras, "[l]os tribunales se han negado a aplicar en forma inflexible la doctrina de cosa juzgada cuando hacerlo derrotaría los fines de la justicia, **especialmente si se plantean consideraciones de interés público.**"[37] (Énfasis nuestro).

De otro modo, se reconoce en nuestro acervo jurídico la figura del impedimento colateral por sentencia como una modalidad de la doctrina de cosa juzgada.[38] En ese sentido, el impedimento colateral por sentencia;

> [s]urte efectos cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final. Como resultado, tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas.[39]

Cónsono con lo anterior, el impedimento colateral por sentencia imposibilita que se litigue, en un litigio ulterior, un hecho esencial que fue resuelto mediante sentencia final en un litigio anterior.[40] No obstante, a diferencia de la doctrina de cosa juzgada, la aplicación de la figura de impedimento colateral por sentencia no exige la identidad de causas para su aplicación.[41]

Sin embargo, al igual que la figura de cosa juzgada, el propósito de la doctrina de impedimento colateral es impulsar la economía procesal y judicial y proteger a las personas del acoso que necesariamente conlleva litigar en más de una ocasión hechos que

---

[36] *Parrilla v. Rodríguez*, 163 DPR 263 (2004); *Meléndez v. García*, 158 DPR 77, 92 (2002); *Pagán Hernández v. U.P.R.*, supra, pág. 736; *Mercado Riera v. Mercado Riera*, 100 DPR 940, 953 (1972).
[37] *Pagán Hernández v. U.P.R.*, supra, pág. 736.
[38] *P.R. Wire Prod. v. C. Crespo & Asoc.*, supra.
[39] *A & P Gen. Contractors v. Asoc. Caná*, 110 DPR 753, 762 (1981).
[40] *P.R. Wire Prod. v. C. Crespo & Asoc.*, supra, pág. 152.
[41] *Rodríguez Rodríguez v. Colberg Comas*, 131 DPR 212, 221 (1989).

ya fueron adjudicados.[42] Hay que tener presente, que el impedimento colateral por sentencia se manifiesta en dos modalidades, la defensiva y la ofensiva.[43] La modalidad defensiva le permite al demandado levantar la defensa, a los fines de impedir la litigación de un asunto levantado y perdido por el demandante en un pleito anterior frente a otra parte.[44]

De otro lado, la vertiente ofensiva es articulada por el demandante en un litigio posterior para impedir que el demandado relitigue los asuntos ya dilucidados y perdidos frente a otra parte.[45] Como corolario de lo anterior, es inevitable concluir que no procede la interposición de la doctrina de impedimento colateral por sentencia -ya sea en su vertiente ofensiva o defensiva- cuando la parte contra la cual se interpone (1) **no ha tenido la oportunidad de litigar previamente el asunto** y (2) **no ha resultado ser la parte perdidosa en un litigio anterior**.[46] (Énfasis nuestro).

### III.

Expuesta la norma jurídica, procedemos a aplicarla a los hechos ante nuestra consideración. De entrada, y en atención al primer señalamiento de error, la Sra. Rivera Montañez aduce que erró la DRA-OGPe al no aplicar la doctrina de cosa juzgada en su modalidad de impedimento colateral por sentencia, en cuanto al hecho de que la construcción que LHEE solicita legalizar se hizo sin que se hubiera obtenido el correspondiente permiso de construcción. No tiene razón. Veamos.

Para empezar, aludimos a lo dispuesto en el Reglamento Conjunto de 2023, Sec. 2.7.4.2, que reconoce que, cuando una estructura fue construida sin permiso, puede presentarse una solicitud para autorizar el uso de la obra o la construcción realizada.

---

[42] *P.R. Wire Prod. v. C. Crespo & Asoc.*, supra, págs. 152-153.
[43] *A & P Gen. Contractors v. Asoc. Caná, supra*, pág. 758.
[44] *Íd.*
[45] *Íd.*
[46] *Íd.*

Siendo así, resulta claro que, aunque una obra o estructura haya sido construida sin permiso, el Reglamento Conjunto de 2023, permite su legalización a través de la OGPe. Por tanto, al aplicar la norma jurídica antes expuesta, resulta forzoso concluir que no existe impedimento para que la OGPe pueda otorgar un permiso de construcción, pese a que exista una querella o se trate de una construcción sin permiso, siempre que se siga el procedimiento establecido en las leyes y reglamentos aplicables para cada distrito.

La sentencia parcial emitida por el TPI, en el caso número MZ2022CV00156, determinó que LHEE no contaba con los permisos requeridos para la construcción realizada. En consecuencia, ordenó la paralización de la obra.[47] Sin embargo, el propio foro de instancia emitió una sentencia final, en la cual desestimaba la demanda porque LHEE había obtenido el permiso de construcción y la obra fue legalizada por la OGPe.[48]

En la segunda ocasión en que la recurrente incoó un pleito en contra de LHEE (caso número MZ2023CV01386)[49], el TPI emitió una sentencia parcial, mediante la cual concedió un término para que LHEE presentara su permiso de construcción o, de lo contrario, tendría que demoler la obra construida sobre la segunda planta de su edificio comercial.[50] Vencido el término otorgado, LHEE presentó el permiso de construcción 2022-434921-PCOC-039898. Como resultado, el TPI dictó una resolución dejando sin efecto la sentencia parcial emitida.[51]

Como puede verse, ambas sentencias parciales fueron dejadas sin efectos por el propio TPI. Ciertamente, lo anterior fue provocado

---

[47] Apéndice del recurso, págs. 101-105.
[48] Apéndice del recurso, págs. 181-182.
[49] Este pleito surge porque el permiso otorgado por la OGPe (Núm. 2022-434921-PCOC-025687) a LHEE, fue impugnado ante la División de Resoluciones Administrativas y luego ante este Tribunal Apelativo en el recurso KLRA202200585. Como resultado, este Tribunal Apelativo dejo sin efecto el permiso y devolvió el caso para que OGPe subsanara los errores cometidos. Apéndice del recurso, págs. 191-203.
[50] Apéndice del recurso, págs. 107-112.
[51] Apéndice de la parte recurrida LHEE, pág. 45.

por la legalización de la construcción, a través del permiso otorgado por la OGPe (núm. 2022-434921-PCOC-039898). En otras palabras, a pesar de que LHEE construyó sin los permisos requeridos por ley, más adelante completó el trámite correspondiente y obtuvo el permiso de construcción.

De igual manera, surge de ambas sentencias parciales que el TPI, se limitó a resolver la solicitud de *injunction* estatutario, al amparo de la Ley 161-2009, *supra,* pues en estos se alegaba que la construcción realizada por la LHEE no contaba con los permisos correspondientes para construir los vagones. Por lo cual, se limitaron a resolver si LHEE contaba o no con los permisos. Nada se dispuso sobre los parámetros de lo construido o alguna prohibición para construir u obtener un permiso para legalizar la construcción.

Por lo tanto, colegimos que no aplica la doctrina de cosa juzgada por impedimento colateral por sentencia. La controversia resuelta por el TPI es distinta a la atendida por la DRA-OGPe, y que hoy tenemos ante nuestra consideración. Además, tampoco existe identidad entre las partes, puesto que la OGPe no figuró como parte en ninguno de los dos procesos judiciales. Finalmente, las leyes y reglamentos permiten que los ciudadanos legalicen construcciones que se hayan realizado sin los permisos requeridos. Por lo tanto, el primer señalamiento de error no fue cometido.

En cuanto al segundo error señalado, debemos determinar si la DRA-OGPe actuó correctamente al validar el permiso otorgado por la OGPe, que permitió la construcción de tres vagones para uso comercial, en un Distrito Comercial Turístico Liviano (CT-L). En particular, la recurrente arguye que la construcción de los tres vagones es un asunto discrecional que requiere una solicitud de variación y una consulta de ubicación. Añade que también exigía una resolución que incluyera determinaciones de hechos y conclusiones de derecho. En otras palabras, señala que el permiso

de construcción no podía ser otorgado como un asunto ministerial. Tampoco le asiste la razón. Veamos.

LHEE presentó una solicitud de permiso para la construcción de tres vagones en la segunda planta de su negocio, ubicado en un distrito Comercial Turístico Liviano (CT-L). La Tabla 6.1 del Reglamento Conjunto del 2023, titulada Equivalencias Distritos de Calificación, contempla las equivalencias de los distritos de calificación y resulta claro, que el distrito Comercial Turístico Liviano es equivalente al distrito Comercial Turístico.[52] Según el Reglamento Conjunto de 2023, entre los usos permitidos en este distrito, se incluye la industria del comercio o la de servicios en los primeros dos niveles.[53] El ingeniero estructural Miguel Santiago Meléndez certificó que la estructura es de dos niveles, con un sótano y un subsótano.[54] Se solicitó permiso para la construcción de tres vagones en la segunda planta del negocio. Aplicando la normativa antes expuesta, el uso propuesto por el recurrido está permitido en el Distrito C-T y CT-L. Siendo la construcción una permitida en el distrito propuesto por el solicitante, el trámite se considera uno ministerial.

Según mencionado, distinto a las determinaciones discrecionales, que conllevan un juicio subjetivo sobre la forma en que se conduce o propone una actividad o acción, el término ministerial en este contexto describe una determinación que no conlleva juicio subjetivo por parte de un funcionario o profesional autorizado, sobre la forma en que se conduce o propone una actividad o acción.

Así, el funcionario o profesional autorizado meramente aplica los requisitos específicos de las leyes o reglamentos a los hechos

---

[52] Apéndice del recurso, págs. 17-18.
[53] *Íd.*; Entre los servicios que pueden ofrecerse en el distrito de CT o CT-L, se encuentran los restaurantes.
[54] *Íd.*, pág. 173.

presentados, pero no utiliza ninguna discreción especial o juicio para llegar a su determinación, ya que esta determinación involucra únicamente el uso de estándares fijos o medidas objetivas. Por tanto, al aprobar el permiso de construcción impugnado ante nos, la OGPe únicamente tuvo que determinar que la construcción estaba permitida por las calificaciones aplicables a las estructuras ubicadas en el distrito CT-L y si cumplía con los requisitos de edificabilidad aplicables.

Es norma reiterada que las decisiones de los organismos administrativos merecen la mayor deferencia judicial, pues son estos los que cuentan con el conocimiento experto de los asuntos que les son encomendados. Asimismo, conforme a la doctrina de revisión judicial, este Tribunal está impedido de variar aquellas determinaciones de una agencia administrativa que sean razonables y encuentren apoyo en el expediente.

En el presente caso no surge prueba alguna que justifique variar la determinación de la DRA-OGPe. La recurrente tampoco demostró que la determinación impugnada fuese arbitraria, ilegal o irrazonable. Por ello, procede confirmar la resolución recurrida.

**IV.**

Por los fundamentos anteriormente expuestos, se confirma la Resolución recurrida.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Rivera Marchand disiente con opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| MARIDZA RIVERA MONTAÑEZ<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE DESARROLLO ECONÓMICO Y COMERCIO; OFICINA DE GERENCIA DE PERMISOS; **LHEE, INC., H/N/C PA'L 24 STEAKHOUSE & TAPAS**<br><br>Recurridos | KLRA202400095 | *RECURSO DE REVISIÓN* procedente de la Oficina de Gerencia de Permisos<br><br>Caso núm.: 2022-444154-SDR-014192<br><br>Sobre: Impugnación de Permiso de Construcción |
|---|---|---|

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

**VOTO DISIDENTE DE LA JUEZA RIVERA MARCHAND**

En San Juan, Puerto Rico, a 28 de febrero de 2025.

Respetuosamente disiento de la determinación mayoritaria. La propiedad objeto de revisión se encuentra localizada en un distrito Comercial Turístico Liviano (CT-L) lo cual, según la tabla de equivalencias de los distritos de calificación, resulta igual a un distrito Comercial Turístico (C-T), según definido por el Reglamento Conjunto 2023. Mediante la Regla 6.1.12.2 de dicho Reglamento, se establece el propósito y los usos permitidos en estas áreas. En particular distingue el uso que se permite en el segundo nivel y el uso permitido sobre el segundo nivel de las estructuras construidas en dicho distrito. Atinente al recurso ante nos procede destacar que, de una lectura del inciso (c) de la Sección 6.1.12.2 se desprende una limitación en el uso permitido sobre el segundo nivel de una estructura ubicada en dicho distrito. Dicha disposición reglamentaria sobre Usos dispone lo siguiente:

   a. Los usos a permitirse en este distrito serán compatibles con los propósitos del mismo y con las disposiciones de esta Regla.
   b. Usos comerciales o de servicios se permitirán en los primeros dos niveles.
   **c. Sobre el segundo nivel se permitirán usos residenciales y de hospederías. (Énfasis nuestro.)**

De un examen sosegado del expediente surge que, el proponente del proyecto, primero, construyó su proyecto sobre el segundo nivel de la propiedad sin obtener el debido permiso requerido en ley y luego solicitó un permiso para legalizar dicho proyecto que consiste en la ubicación de tres vagones por encima de la segunda planta de la propiedad. La propiedad en controversia incluye dos plantas, un sótano y un subsótano que, a su vez, se dedica al negocio de venta de comida y bebidas alcohólicas. Lo antes, no está en controversia. Tampoco está en controversia que los tres vagones (cuyo propósito es para el uso accesorio de un baño, barra y cocina) se ubicaron sobre el segundo nivel, lo cual coincide con la ventana y sala de la recurrente, quien vive junto a sus hijos en la propiedad colindante.  Es decir, el nivel de la construcción que se pretende legalizar queda al nivel de otra propiedad colindante que tiene un uso residencial.

Siendo una construcción dentro de un distrito comercial turístico que permite el uso comercial, la agencia recurrida determinó que el trámite a seguir, para considerar los méritos de la solicitud, es de índole ministerial por tratarse de un permiso de construcción. En un trámite ministerial, la agencia se circunscribe a evaluar documentos sometidos por el profesional autorizado en representación del solicitante (que se presumen correctos). Además, la agencia confirma si se cumplen los requerimientos en ley, sin consignar hechos y derecho. Ahora bien, lo antes no impide que, la agencia concernida evalúe y aplique la totalidad de las disposiciones del Reglamento aplicables al cuadro fáctico ante su consideración.

En este caso no se desprende del expediente fundamento alguno que permita ignorar lo establecido en la Sección 6.1.12.1 inciso (c). Al justipreciar la totalidad de las circunstancias de la presente causa se desprende que, el análisis de la agencia recurrida y la determinación mayoritaria se limita a la aplicación de la Sección 6.1 y en particular destaca la Sección 6.1.12.2 inciso (b) que establece que, los usos comerciales o de servicios se permitirán en los primeros dos niveles. No se abunda, ni se señala que, en la misma disposición reglamentaria, se establece el uso que se permite sobre el segundo nivel es uno residencial o de hospedería, lo cual no incluye el uso comercial. Al ignorar la totalidad de la disposición reglamentaria en el análisis requerido se incumple las normas de hermenéutica que guían nuestro quehacer judicial.

La hermenéutica legal es el proceso de interpretar las leyes; es decir, auscultar, averiguar, precisar y determinar cuál ha sido la voluntad legislativa. *Class Fernández v. Metro Health Care Management System, Inc.*, 2024 TSPR 63, resuelto el 17 de junio de 2024. Este método de interpretación se utiliza, no solamente en la interpretación de estatutos, sino también, en la de los contratos, testamentos, **reglamentos administrativos** y cualquier otro documento. R. E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. JTS, 1987, Vol. I, pág. 241. Véase, además, *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 717, 738 (2012). Ante esto, resulta necesario que las diversas secciones de un estatuto se deben interpretar conjuntamente y no de forma aislada con el propósito de lograr una interpretación lógica y razonable de la intención legislativa. *Romero Lugo v. Cruz Soto*, supra, en la pág. 993; *Romero Barceló v. ELA*, 169 DPR 460, 477 (2006) citando a *Mato v. Junta Examinadora*, 165 DPR 741, 748-749 (2005). Es decir, que las leyes se consideran como un todo para determinar el significado de cada parte. *Romero Lugo v.*

*Cruz Soto,* supra. Esto es así porque, los tribunales estamos autorizados a interpretar las leyes, no limitándose, cuando éstas no son claras o concluyentes sobre un punto particular; cuando el objetivo es el de suplir una laguna en el estatuto; o cuando la justicia lo requiera con el propósito de mitigar los efectos adversos de la aplicación de una ley a una situación en particular. *Brau, Linares v. ELA,* 190 DPR 315, 340 (2014).

A esos efectos, resulta evidente que, a la recurrente le asiste la razón al concluir que el inciso (c) del citado Artículo 6.1.12.2 resulta aplicable a la presente causa. Es decir, el inciso (c) de la Sección 6.1.12.2 debió ser resaltado dado que, establece que "sobre el segundo nivel se permitirán usos residenciales y de hospederías". Lo antes, en armonía con el inciso (b) de la misma sección, nos lleva a concluir que, el propósito reglamentario es delimitar el uso entre el segundo nivel y lo que se construya sobre el mismo.

De esta forma se colige que, el proponente del proyecto solicita un uso no contemplado para vagones (dedicados al uso de barra, baño y cocina) en un nivel sobre la segunda planta. En su consecuencia, ante un uso vedado por el Reglamento le corresponde agotar el proceso de variación de uso o consulta de ubicación. Aun cuando se reconoce que, el uso en el Distrito Comercial Turístico (C-T) y Comercial Turístico Liviano (CT-L) permite el uso propuesto, la reglamentación vigente establece un límite cuando trata de un proyecto o construcción por encima de una segunda planta existente en dicho distrito. La agencia recurrida debió reconocer que su propio reglamento establece una política pública sobre la planificación y construcción en este distrito que solo permite uso comercial hasta un segundo nivel y no por encima. Dicha disposición reglamentaria sólo contempla la construcción de hospederías y uso residencial en el área sobre el segundo nivel, no permite otra cosa. La letra de la disposición reglamentaria es clara y debió ser aplicada al cuadro

fáctico ante nos. Como se sabe, las agencias gubernamentales tienen la obligación de cumplir y hacer cumplir sus propios reglamentos. Se cometió el segundo error señalado y procede la revocación del dictamen administrativo impugnado.

Por todo lo antes, respetuosamente disiento.


**MONSITA RIVERA MARCHAND**
**JUEZA DE APELACIONES**